NELLIE F. MEISNER, APPELLANT, V. DORA HILL ET AL., APPELLEES.

FILED NOVEMBER 13, 1912.  No. 16,611.

1. Homestead. Our statute uses the term "homestead" in its commonly accepted meaning—the house and land where the family dwells.

2. ———: RIGHTS OF CREDITORS. The homestead is subject to execution sale upon judgments against the holder of the title if its value exceeds $2,000. This limitation is solely for the purpose of fixing the rights of the homestead claimants and the creditors, respectively.

3. ———: DESCENT. If the legal title to the homestead is in the

Meisner v. Hill.

husband, and there are no claims of his creditors against it, upon his death the homestead vests in the widow for life, without regard to its value, and in the absence of a will of the husband his heirs take the homestead subject to the life estate of the widow. *Tyson v. Tyson,* 71 Neb. 438, overruled.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*E. C. Calkins* and *H. F. Rose,* for appellant.

*John J. Sullivan* and *Fred W. Ashton, contra.*

SEDGWICK, J.

George Meisner died intestate. The plaintiff is his widow and the defendants are his children by a former wife. Fourteen years before his death he had selected the northwest quarter of a section of land in Buffalo county as his family homestead, which at the time of his death was worth about $100 an acre, and built a residence thereon of about the value of $9,000. At the time of his death he owned other land adjoining the said quarter section, and other property of the value of more than a half million dollars. The plaintiff and the defendants by agreement made a division of the real estate, except the said quarter section of land. The plaintiff contended that she was entitled to the quarter section of land selected as their home and dwelling-house and improvements thereon during her life. The defendants contended that, as the home property was of greater value than $2,000, they were entitled to have it sold and the proceeds in excess of $2,000 divided among the heirs of the deceased. The parties then entered into an agreement to submit this question to the district court. The terms of their agreement were set out in writing at full length and signed by the parties, but afterwards, for some reason, the defendants declined to voluntarily submit the matter to the district court, insisting that the county court, and not the district court, had jurisdiction thereof, and the

plaintiff then brought this action in the district court asking that court to determine that the said quarter section of land "descended to this plaintiff for and during the term of her natural life," and asking for general equitable relief. The answer admitted the facts as above stated, denied the jurisdiction of the district court, and alleged "that the property descended to the defendants subject to the homestead right of the plaintiff to the extent of $2,000 for life." The court decreed that the plaintiff's interest in the premises "be limited to the right to the use of $2,000 for and during her natural life, the present value of which is the said sum of $1,464; and that she be forever barred and restrained from claiming any further or greater homestead interest therein." The plaintiff appealed.

Considering the importance and necessary discussion of the principal question involved, we conclude that the district court was the proper forum without discussion. This conclusion is justified, we think, by our former decisions.

What is a homestead? Is it the present worth of the exemption which the statute allows against the claims of creditors, or is it the family home? Section 6 of the present homestead law (Comp. St. 1911, ch. 36) requires a creditor, when he seeks to subject a homestead to the payment of his claim, to take an oath "that the value of the homestead exceeds the amount of the homestead exemption." This is a legislative declaration that the homestead is something more than, and different from, the $2,000 exemption against the claims of creditors. This distinction plainly runs through all of our legislation. It is emphatically presented in substantially the same words in sections 8 and 11 of the act.

The first territorial legislature adopted laws from the state of Iowa that fill about 100 pages of the published laws of that session. Among other subjects, it included the subject of execution and exemptions of property. After exempting public property from sale upon execu-

tion, section 478 (1 Complete Session Laws, p. 36) specifies certain articles of personal property exempt to private individuals, and section 479 provided: "If the debtor is the head of a family there is further exempt— his homestead as provided by law." That is all that is said about the homestead, and then follows specifications of other articles of personal property that shall be exempt. There was no attempt to define "homestead." The word was used in its general acceptation—the home of the family, the common law castle of the citizen. The question of value did not enter into its description. The poor and the rich were treated alike; no one was to be deprived of his home. At the same session of the territorial legislature an independent act was passed providing that the property of married women, owned by them before marriage, should be exempt from their husband's debts. 1 Complete Session Laws, p. 83. The next session of the territorial legislature enacted a general law "respecting practice and proceedings in courts of justice." This law embraces the subject of executions and exemption from sale thereon. 1 Complete Session Laws, p. 341. It contains the same language in regard to the homestead as the former act, exempting it without regard to value. It was not necessary to define it; evidently the commonly accepted definition was adopted. "Homestead" was well defined at the common law. Webster's New International Dictionary defines it as "the land and buildings thereon occupied by the owner as a home for himself and his family, if any, and more or less protected by law from the claims of creditors." Bouvier's Law Dictionary adopts the definition from the supreme court of New Hampshire: "The home place—the place where the home is. It is the home; the house and the adjoining land; where the head of the family dwells; the home farm." If a tract of land is purchased by the parties for a home, and is transferred to one of them accordingly, and is by them in good faith occupied as their home residence, the land so transferred to them, and dwelling-house and other improvements

placed thereon, become their homestead.    The Revised
Statutes of 1866 treated the subject of homestead and
exemption under that title.    Section 525 provides: "A
homestead, consisting of any quantity of land not exceed-
ing 160 acres, and the dwelling-house thereon and its ap-
purtenances, to be selected by the owner thereof, and not
included in any incorporated town, city or village, or,
instead thereof, at the option of the owner, a quantity of
contiguous land, not exceeding in amount two lots, being
within an incorporated town, city or village, and the
dwelling-house thereon and its appurtenances, owned and
occupied by any resident of the territory, being the head
of a family, shall not be subject to attachment, levy or
sale, upon execution or any other process issuing out of
any court within this territory, so long as the same shall
be owned and occupied by the debtor as such homestead,"
with the proviso that the "homestead mansion," and 20
acres of land whereon the mansion is situated, and not in
any corporate town, city, or village, shall be exempt, and
land adjoining the mansion not exceeding $500 should
also be exempt, thus defining the homestead and exempt-
ing it absolutely.    The next session of the legislature
amended the act so as to exempt the homestead "so long
as the same shall be owned and occupied by the debtor
as such homestead."    2 Complete Session Laws, p. 376.
By the act of 1873 the homestead was made liable to sale
upon the foreclosure of a mortgage "duly executed by the
head or heads of the family."    2 Complete Session Laws,
p. 711.

By the act of 1875 the exemption of the homestead was
continued, with a proviso that the homestead and appur-
·tenances so exempted from forced sale "shall not exceed
$2,000 in value" (laws 1875, p. 45, sec. 1), and providing
in the sixth section of the act that, if the homestead con-
sists of a house and lot which will not bear division with-
out manifest injury, and the "fair and reasonable rent
for the same" will be more than $300 annually, such ex-
cess of rental must be paid by the debtor annually until

the debt is paid. Section 19 of the act of February 19, 1877, provides: "Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law." Laws 1877, p. 37. This is a very suggestive section. That part of the homestead which the creditor might take is clearly not considered the whole homestead, and when one spouse dies the other might occupy the whole homestead, unless the creditors interfere. This is the first provision for the descent of the homestead upon the death of the spouse who holds the legal title. It specifies clearly the homestead that so descends, and it is the "whole homestead," and not merely the value exempted from the claims of creditors.

In 1879 our present statute was enacted. Laws 1879, p. 57. The first section of this act provides that a homestead not exceeding in value $2,000, including the dwelling-house in which the claimant resides, etc., shall be exempt from judgment liens and from execution or forced sale. This section does not attempt to define what a homestead shall be. Its object is to continue the exemption from the claims of creditors and limit that exemption. Section 17 of the act continues the provision for the descent of the homestead. It enlarges the brief provision of section 19 of the previous act. The survivor now takes the title and possession for life, instead of the mere right of occupancy. The heirs of the deceased are declared to inherit the homestead, subject to the life estate of the surviving spouse, just as they would inherit other property of the deceased. The life estate of the surviving spouse and the inheritance of the heirs of the deceased are protected against "any debt or liability contracted by or existing against" the deceased spouse prior to his or her death, "except such as exists or has been created under the provisions of this chapter." This last clause, of course, refers to mechanic's lien, mortgages, and the claims of creditors. It is still the "whole homestead" that descends. Taxes, liens, mortgages, and claims of creditors, if they exist, may inter-

fere with the enjoyment of it, but it is not measured by such claims. The distinction between the homestead and the amount of the homestead exemption is preserved all through the statute, though in some few instances the language is indefinite. This distinction, as already stated, is especially made manifest in our present statute. We could not consistently require a citizen to swear that the value of the homestead exceeds the homestead exemption if the two are identical. If the homestead in which the surviving spouse is to have a life estate is the present worth of the amount exempted from the claims of creditors, then it could not be true that the homestead exceeds the exemption.

The whole body of our legislation upon the subject of homestead so manifestly shows what it is intended shall be the home that descends to the surviving spouse for life that repetition may be justifiable in considering the course of the legislation. Our first legislation upon the subject recognized the existence and importance of the home as it was then identified, and preserved it for the family against all claims of creditors. The same action was taken in the next legislation upon the subject. The next legislation describes the homestead as the "homestead mansion" and 20 acres of land whereon the mansion is situated, together with adjoining land of the value of $500. The homestead thus defined was absolutely exempt. The next legislation limited the exemption "so long as the same shall be owned and occupied by the debtor as such homestead." The next legislation allowed the homestead to be incumbered by a mortgage "duly executed by the head or heads of a family," and made it liable to sale upon the foreclosure of such security, but otherwise left it absolutely exempt so long as owned or occupied as a home. And, then, in the act of 1875, the $2,000 limitation on the exemption was introduced into the law of the state, but the legislature was careful to preserve the identity of the homestead as the family home, and provided a way by which the family might keep and occupy the home

against any claims of creditors. There is reason for preventing the investment of all one has in an excessively valuable homestead for the purpose of defrauding creditors. The same reasons do not exist for taking the home away from the surviving spouse for the benefit of adult heirs, still less in the interests of minor heirs who are ordinarily more benefited by preserving the family home intact. The statute provides an elaborate method for creditors in the former case, but provides no means of dividing the homestead between the heirs and the surviving spouse. This fact of itself strongly indicates that the legislature never contemplated such a division. This $2,000 limitation of the exemption against the creditors has since that time been continued in our legislation, but no statute has ever declared that the limitation in favor of creditors is the full measure of the home that the surviving spouse may occupy for life, or that the present value of the use of $2,000 for the life of the surviving spouse shall be equivalent to a home.

Next comes the act of 1877, by which the surviving spouse is given the "whole homestead" for life, unless "otherwise disposed of according to law;" that is, unless sold for taxes or for mortgage foreclosure or affected by the statute in regard to claims of creditors. This provision of the act of 1877 is continued in the seventeenth section of the act of the next legislature, which is our present law, as already suggested.

When the whole history of our legislation upon the subject is considered, there is no ground for supposing that the legislature intended that, when there were no debts, mortgages or other liens, anything less than the "whole homestead" should vest in the surviving spouse for life. There has never been any legislation that would justify the conclusion that, when the husband and wife had established a home and occupied it for years, and the one in whose name the legal title was placed should die, and the home should be of greater value than the present worth of the use of $2,000 for the life of the survivor, the

home must be sold and the proceeds divided among the heirs, and the surviving spouse must seek another home. Such legislation would be monstrous, and our lawmakers cannot be charged with it. Indeed, the present act itself repels such a conclusion. The first section does not define the homestead; it merely declares how much of it shall be exempt from the claims of creditors. The sixth section declares that creditors shall not interfere with the homestead without first swearing that it exceeds in value the homestead exemption, and the seventeenth section declares that the homestead shall vest in the survivor for life, subject only to specified liens.

It is said that the husband holding the legal title may incumber the homestead by confessing judgment, and so compel its sale. And, also, that, when husband and wife have joined in such a conveyance, the proceeds are at the disposal of the owner of the homestead title, and only $2,000 of the proceeds is exempt from levy by creditors; but a court of equity would enjoin the sale upon a judgment fraudulently confessed, and there can be no sale of a homestead without the consent of both husband and wife, which might depend upon the proposed disposition of the proceeds. In *Tyson v. Tyson,* 71 Neb. 438, it is decided that, "in a contest between the widow and the heirs at law as to the extent of her homestead in suburban lands, she is entitled to a homestead not exceeding 160 acres in area and $2,000 in value." And in *Teske v. Dittberner,* 70 Neb. 544, *Meek v. Lange,* 65 Neb. 783, and *Wardell v. Wardell,* 71 Neb. 774, and other cases, in some of which perhaps the precise point was not involved, similar expressions have been used. The legal profession and the people of the state are entitled to know the construction that this court intends to put upon important statutes of this nature. It is with exceeding reluctance that we refuse to follow the earlier decisions. This is particularly true when the rule announced in such earlier decisions has become the rule of property. Indeed, it is generally considered that in such cases it is better

to abide by a wrong construction, and leave the remedy with the legislature, than to confuse the decisions of the court upon important questions. The decision in *Tyson v. Tyson, supra,* however, has not become a rule of property in the full meaning of that expression. The homestead estate which vests in the surviving spouse for life is an ephemeral estate. It dies with the holder of it, and in most cases its life is short. At the end of the life estate in the homestead, the heirs of the deceased holder of the legal title take the property precisely as they do any real estate not of a homestead character, with the exception that it is not, in their hands, liable, for debts of their ancestor, for which it could not have been liable in his or her lifetime. Therefore no permanent real estate title depends upon the homestead of the surviving spouse. The case of *Teske v. Dittberner, supra,* was three times considered by this court, and was very much discussed. The question in the case was whether the holder of the legal title could "make a testamentary disposition of the property in question, subject to the inchoate life estate therein of his wife," and it was held, after much discussion, as stated in the opinion (65 Neb. 167), that the right to so dispose of the property "is expressly preserved to him by the statute." We have no fault to find with this conclusion. The question as to what constitutes "the inchoate life estate therein of his wife" was not discussed in any of the opinions, but was assumed, and we are now convinced erroneously, to be only that portion of the homestead which the law exempts as against the claims of creditors. Upon this vital question, then, the case is not to be deemed authoritative. In *Meek v. Lange,* 65 Neb. 783, the question presented, as stated in the opinion, was "whether or not damages for loss of the bargain can be recovered against one who, without the assent of his wife, makes an executory contract for the sale of his family homestead, which the wife subsequently refuses to carry out." It was held that no recovery could be had "for the loss of the bargain." It was said: "Possibly

the plaintiff is entitled to nominal damages for the absolute refusal to convey any of the premises, as they were found to be worth more than $4,000. The homestead right evidently does not protect defendant as to more than $2,000 worth." In this case, also, the character and quality of the family homestead as determining the life estate of the surviving spouse were not necessarily involved in the point decided, and were not necessary to the disposition of the case. The decisions of this court as affecting directly or indirectly the question here presented have not been exactly uniform. In *Teske v. Dittberner*, 70 Neb. 544, 556, it was said: "In so far as this court has heretofore expressed itself regarding the scope and effect of our homestead statute, its decisions have generally been favorable to a liberal construction of the act, such as would grant the fullest measure of protection to the rights and interests of the homestead claimants. * * * 'The law proceeds upon the theory that both husband and wife are entitled to the benefit of the homestead act, and this right cannot be waived except by the consent of both.' *Bonorden & Ranck v. Kriz*, 13 Neb. 121; *Aultman & Taylor Co. v. Jenkins*, 19 Neb. 209. It is held in *Swift v. Dewey*, 20 Neb. 107, that a mortgage of a tract of land including a homestead, executed by a married man without the concurrence and signature of the wife, is invalid for the purpose of impairing, dismembering, or in any manner affecting such homestead or its appurtenances. To the same effect is *McCreery v. Schaffer*, 26 Neb. 173." Many other decisions of this court, more or less inconsistent with the present contentions of the defendants, are quoted from with approval. In *Clarke v. Koenig*, 36 Neb. 572, *Larson v. Butts*, 22 Neb. 370, and subsequent cases, it is held that a contract for the sale of a homestead will not be specifically enforced unless executed by both husband and wife, and when the purchaser is willing to accept that part of the real estate which exceeds $2,000 in value as a compliance with his contract, and this without regard to the value of the homestead.

Commenting upon the various decisions of this court upon the subject of homestead, the brief of appellant well says: "If it be true that the lands and tenements comprising the homestead, in so far as they exceed the pecuniary value of $2,000, are not intended to be afforded any protection or privilege by the homestead act, upon what ground, then, can the court justify its previous holdings that a sale or conveyance of such lands and tenements, when not signed and acknowledged by both husband and wife, is absolutely void, without regard to the circumstance that the value greatly exceeds $2,000? How, then, may the court justify its holdings that the executor or administrator, upon whom the right of possession of all real estate devolves by a specific provision of the decedent act, cannot dispossess the surviving husband or wife of the land previously occupied as the homestead? How, then, may the court justify its previous holdings that the sale of the homestead property under an ordinary execution is absolutely void, notwithstanding the most formal order of approval and confirmation by the district court? If the term 'homestead,' used in the act, implies in every instance a limitation of pecuniary value of $2,000, then, necessarily, the excess value of the land and tenements beyond that limitation cannot be afforded any measure of protection. Under such interpretation, a conveyance by deed or mortgage of the lands and tenements comprising the family abode, which are of the admitted value of $10,000, would not, in so far as it operated upon the excess valuation of $8,000, affect in any manner the statutory homestead. In such case, the mortgage of the owner, in which the spouse did not join, would necessarily be valid as to $8,000, and, if the amount of the mortgage covered no more than the overplus or excess value, it would be valid and enforceable in its entirety."

We conclude therefore that the decision in *Tyson v. Tyson, supra,* and similar expressions affecting rights between the surviving spouse and the heirs in *Teske v. Dittberner,* 70 Neb. 544, *Meek v. Lange,* 65 Neb. 783, and

*Wardell v. Wardell,* 71 Neb. 774, and other cases, ought to be overruled. This decision does not affect former holdings of this court in regard to the rights of creditors against homestead property.

The judgment of the district court is reversed and the cause remanded, with instruction to enter a decree in harmony with the views expressed in this opinion.

REVERSED.

HAMER, J., concurring.

On or about the 2d day of March, 1909, George Meisner died intestate in Buffalo county, Nebraska, leaving a widow, and the defendants who are his children by a former marriage. At the time of his death he owned a section of land near Shelton, in that county, 36-10-13, on the northwest quarter of which he and his wife then resided in a dwelling-house stipulated to be of the value of $8,000. They had lived together on this particular quarter about 14 years immediately prior to his death, and this quarter and the dwelling-house are claimed as the family homestead. The land, exclusive of the dwelling-house, is claimed to have been worth $100 an acre. In addition to this particular section, George Meisner owned many sections in the vicinity, and his estate was worth more than a million dollars. By a voluntary agreement the widow and the heirs made partition of all the real property belonging to said estate except the home place; that is, the northwest quarter of 36-10-13. The widow contended that she was entitled to the use of the dwelling for life, with so much of the land upon which it was situated as was necessary and appropriate for the reasonable enjoyment of the same as a home. The other heirs contended that the dwelling itself was of greater value than $2,000, and that they were entitled to have the same sold, and that, after paying the widow the present value of a life estate in $2,000, they were entitled to have the remainder divided among the heirs. Mrs. Meisner and the heirs entered into an agreement for the submission of the ques-

tion in dispute to the district court and for the disposition of the said home place according to their rights as they might be determined by said court.. A suit was brought in the district court for Buffalo county, in which a judgment was rendered to the effect that, the home place being worth more than $2,000, the homestead right of the widow was limited to the use during her lifetime of the sum of $2,000 in money. By the judgment the present value of Mrs. Meisner's interest was found to be $1,464. The pleadings and an agreement made between the parties state the facts.

The district court found and decreed: "(1) That the plaintiff has a homestead interest in the premises described in the petition; but that said interest is limited to the use for life of the sum of $2,000. (2) That the present value of the homestead interest in said property is the sum of $1,464. It is further ordered and decreed that the plaintiff's homestead interest in the premises in the petition mentioned be limited to the right to the use of $2,000 for and during her natural life, the present value of which is the said sum of $1,464; and that she be forever barred and restrained from claiming any further or greater homestead interest therein." The plaintiff excepted to so much of said finding and decree as limited her homestead right to the sum of $2,000, and appealed to this court from the judgment rendered.

Whether there is a succession to the surviving spouse implied by the word "homestead" in the present act of 1879 is the question to be determined. We will begin with the consideration of the homestead act of 1879. Laws 1879, p. 57. Section 17 of that act reads: "If the homestead was selected from the separate property of either husband or wife, it vests, on the death of the person from whose property it was selected, *in the survivor for life,* and afterwards in his or her heirs forever, subject to the power of the decedent to dispose of the same, *except the life estate of the survivor, by will.* In either case it is not subject to the payment of any debt or lia-

bility contracted by or existing against the husband and wife, or either of them, previous to or at the time of the death of such husband or wife, except such as exists or has been created under the provisions of this chapter." The foregoing denies the power of the decedent to dispose of "the life estate of the survivor." The homestead selected from the separate property of either husband or wife vests "in the survivor for life." Afterwards it vests in the heirs of the husband or wife from whose property it has been selected. The homestead coming from the separate property of either the husband or wife vests "in the survivor for life." Section 4 of the act provides: "The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by *both husband and wife.*" This is substantially a reproduction of the substance of section 3 in the act of 1877, hereafter referred to and discussed. Seemingly the purpose of the legislature by the enactment of these sections was to protect the person who is once married from losing his or her home by any action of the spouse, or by any action of the creditors of the spouse. This may give a very substantial effect to the *succession of the homestead right* to the "survivor *for life.*"

The first legislation on the subject of the homestead in Nebraska was in 1860, when the legislature passed an act contained in 1 Complete Session Laws, p. 648. It is also in Revised Statutes 1866, sec. 525, p. 484. "A homestead, consisting of any quantity of land not exceeding 160 acres, and the dwelling-house thereon and its appurtenances, to be selected by the owner thereof, and not included in any incorporated town, city, or village, or, instead thereof, at the option of the owner, a quantity of contiguous land, not exceeding in amount two lots, being within an incorporated town, city, or village, and the dwelling-house thereon and its appurtenances, owned and occupied by any resident of the territory, being the head of a family, shall not be subject to attachment, levy, or

32

sale, upon execution or any other process issuing out of
any court within this territory, so long as the same shall
be owned and occupied by the debtor as such homestead.
This section shall be deemed and construed to exempt
such homestead in the manner aforesaid during the time
it shall be occupied by any one or more of the *family* of
the debtor, or by the *widow* or minor child or children of
any deceased person who was, when living, entitled to the
benefit of this subdivision; provided, that the homestead
mansion and 20 acres of land whereon the mansion is
situate, and land adjoining the same to the extent of $500
in value, all being without an incorporated town, city, or
village, shall be exempted, and no more." Here is a
homestead exempted as against creditors for the use of
the family, and the widow or minor child of any deceased
person who was entitled to the benefit of the provision
may occupy the land *without any limit as to time,* be-
cause the time is "the time it shall be occupied" by any
one of the persons named, and they are determined by the
act to be the family.

In *Dorrington v. Myers,* 11 Neb. 388, the head of the
family was a widower. This court said: "When as the
head of a family he entered into possession of this home-
stead, he became vested, so to speak, of a homestead estate
therein, which was alienable only by sale or abandon-
ment." If this be true, then the occupant mentioned
could continue indefinitely to occupy the place. This
court said in the case cited: "Neither the death of the
wife, nor her abandonment of her husband, nor the ar-
rival at full age and departure from the parental roof of
all the sons and daughters, would have the effect of dis-
mantling the homestead of the protection of the exemp-
tion law."

It will be noticed that the homestead provided for by
section 525 of the code of 1866 had *no specific value.* It
was a place to live. There was a limit to the value of the
land adjoining the first 20 acres on which the mansion
stood, but the "homestead mansion" and the 20 acres

upon which the same stood *might* be of any value. It was not in the beginning an *exemption* of *money*, it was an exemption of a *place to live*. In the body of the section it is said: "This section shall be deemed and construed to exempt such homestead in the manner aforesaid during the time it shall be occupied by any one or more of the family of the debtor, or by the widow or minor child or children of any deceased person who was, when living, entitled to the benefit of this subdivision." Here is the matter of occupation that is to be protected, and it applies to "any one" of the family of the debtor, or to his widow or minor child, or to the child or minor children of any deceased person who was, when living, entitled to the benefit of the act.

The act of 1860 was still in force on the 24th of June, 1867, when it was amended by the legislature. The amendment made section 525 of the code of civil procedure of the Revised Statutes of 1866 read: "A homestead, consisting of any quantity of land not exceeding 160 acres, and the dwelling-house thereon and its appurtenances, to be selected by the owner thereof, and not included in any incorporated city or village, or, instead thereof, at the option of the owner, a quantity of contiguous land not exceeding two lots, being within an incorporated town, city, or village, * * * or in lieu of the above, a lot or parcel of contiguous land not exceeding 20 acres, being within the limits of an incorporated town, city, or village, the said parcel or lot of land not being laid off into streets, blocks, and lots, owned and occupied by any resident of the state, being the head of a family, shall not be subject to attachment, levy, or sale upon execution or other process issuing out of any court in the state so long as the same shall be owned and occupied by the debtor as such homestead. This section shall be deemed and construed to exempt such homestead in the manner aforesaid, as well *after* as *before* the death of the debtor, and in the event of the death of the debtor the estate in such homestead shall de-

scend to and be vested in his heirs at law or legatees, free and divested from all claims if (of) any creditors thereto." 2 Complete Session Laws, p. 376. The section as amended at that time refers to land and dwelling-house and appurtenances being a place to live, and *says nothing of valuation.* It contains an amendment which seems quite important. It is: "This section shall be deemed and construed to exempt such homestead in the manner aforesaid, as well after as before the death of the debtor, and in the event of the death of the debtor the estate in such homestead shall descend to and be vested in his heirs at law or legatees, free and divested from all claims if (of) any creditors thereto." This section 525 of the code of civil procedure as amended still remained the law of the state at the time of the publication of the General Statutes of Nebraska of 1873. This act as amended continues the homestead exemption absolutely regardless of the value of the property exempted. The original act of 1860 refers to the dwelling-house as the homestead mansion. As the law was left after it was amended June 24, 1867, the homestead was exempt without regard to its value, and it descended to the heirs divested of any claim of any creditor. The law continued in this way until the 25th of February, 1875, when a new act was passed. 2 Complete Session Laws, p. 843. It will be seen that for 15 years there was in Nebraska a homestead law for the benefit of the family which contained no provision whatever concerning the value of the property exempted. It might be $5,000, or $10,000, or any other sum of money.

By the act of February 25, 1875, there came into existence for the first time that provision that the homestead should not exceed $2,000 in value. It reads as follows: "The family homestead of each head of a family, consisting of any quantity of land not exceeding 160 acres, and the dwelling-house thereon and its appurtenances, shall be exempt from attachment, levy, or sale upon execution or other process issuing out of any court in the state, so long as the same shall be owned and oc-

cupied by the debtor as such homestead; provided, that such homestead and appurtenances situated thereon shall not exceed $2,000 in value; provided, that such exemption shall not apply to homesteads which have been heretofore, or which may be hereafter, mortgaged by the owners thereof." 2 Complete Session Laws, p. 843. Section 1 as above quoted was amended February 13, 1877, to read as follows: "That section one (1) of an act entitled 'An act to exempt the homestead of families from attachment, levy, or sale, upon execution or other process issuing out of any court in the state of Nebraska,' approved February 25, 1875, be amended to read as follows: Section 1. The family homestead of each head of a family, consisting of any quantity of land not exceeding 160 acres, and the dwelling-house thereon and its appurtenances, shall be exempt from attachment, levy, or sale, upon execution or other process issuing out of any court in the state, so long as the same shall be owned and occupied by the debtor as such homestead; provided, that such homestead and appurtenances situated thereon shall not exceed $2,000 in value." On the 19th of February, 1877, the homestead law was again amended and re-enacted. 2 Complete Session Laws, p. 933.

The act of 1875 heretofore mentioned was repealed by the act of 1879, along with the act of 1877, and it is the act of 1879 which remains to be discussed. In all the statutes referred to in which there is a limitation upon the exemption of $2,000, it is against creditors, and not against the survivor. The failure to express the same limitation upon the succession would seem to indicate that it was not the intention of the legislative body to impose this limitation in the matter of succession. The legislature has very carefully provided for a means to subject the excess of the value of the homestead above $2,000 to the payment of any judgment that may be rendered. Nothing is said about a $2,000 homestead. It is just simply a homestead to which "the survivor for life" succeeds. If the legislature had intended that only

$2,000 should go to the surviving husband or wife, and that any excess above that should go to the other heirs, why should it not have said so? In the event that the homestead is above $2,000 in value, it is not saved at all as against the heirs, but $2,000 in money is saved as a *homestead exemption.* It is a different homestead that is contemplated by section 17 of the act of 1879. That is a homestead to which the survivor succeeds when the husband or wife dies. It is to furnish the home for the family. It is to include the shelter which protects those who are members of the family. The courts should establish a beneficent rule by which the widow and the children, when the husband dies, will be left in the home, and, after the children are grown up, the widow should be permitted to remain in the old home where she has resided with her husband, and which she has perhaps faithfully helped to earn and save. There is no reasonable excuse for cutting down the interest of the homestead succession which should go to the *widow* and provide for her a home during her declining years. The widow ought to be permitted to live in the same house which she and her husband have occupied together, and she ought not to be punished because the bread-winner is dead.

Section 1, ch. 49, laws 1907, enacts: "When any person shall die, leaving a husband or wife surviving, all the real estate of which the deceased was seized of an estate of inheritance * * * shall descend subject to * * * the rights of homestead." It would seem that there is no conflict between this statute covering the succession of heirs of descendants and the law of 1879 relating to homesteads. The statute is intended as a complete protection to the family against the right of arbitrary domination by the husband or wife who happens to hold the title to the homestead estate. This is the direct provision of section 4 of the act of 1879, and the same idea was fully expressed in section 3 of the act of 1877. Section 4 of the act of 1879 reads: "The homestead of a married person cannot be conveyed or encumbered unless the instrument

by which it is conveyed or encumbered is executed and acknowledged by both husband and wife." Laws 1879, p. 58. Section 3 of the act of 1877 reads: "A conveyance or encumbrance by the owner is of no validity unless the husband and wife, if the owner is married, concur in and sign the same joint instrument." Laws 1877, p. 34. The homestead act of 1877 protects the *homestead exemption* from the creditor to the extent of $2,000, and it protects the *homestead itself* from the improvident act of the owner of the legal title.

This record does not involve the rights of the creditors. It deals with the rights of inheritance of the heirs at law as against the widow. In *Galligher v. Smiley,* 28 Neb. 189, Chief Justice REESE, delivering the opinion of this court, said: "In its inception a homestead is a parcel of land on which the family resides, and which is to them a home." In *Palmer v. Sawyer,* 74 Neb. 108, the definition of Judge REESE was quoted with approval.

In *Palmer v. Sawyer, supra,* this court held that the man who had acquired a homestead estate during the subsistence of a family relationship was entitled to occupy the premises after the family relationship had been broken up by death and removal. In that case Albert Palmer purchased the land in controversy in the year 1898, and at that time was a widower with three minor children living with him upon the premises. One of the children died and two moved away, so that the father was left alone in the possession and occupancy of the premises. A judgment was rendered against him, and an execution was levied on the land, and there was a proceeding to enjoin the sale. The question to be determined was whether the plaintiff was entitled to claim the property as his homestead. The court held the "head of the family" to include "every person who has residing on the premises with him or her, and under his care and maintenance, either: (1) His or her minor child, or the minor child of his or her deceased wife or husband." This court then recites section 17, and in connection with the two

provisions so recited say: "It will be noticed that the provisions of these statutes reserve the homestead right to every person who is the head of a family as defined in section 15, whether married or unmarried at the time of the acquisition. When the homestead right is acquired by a married person, it cannot be conveyed or encumbered, unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife, under section 4." The court cite *Whitlock v. Gosson*, 35 Neb. 829, and say that this section of the statute was declared to make the conveyance of a homestead executed by the husband alone void, not only void as to the interest of the wife, but also as to the interest of the husband who executed it. When a homestead right is acquired, it can only be divested in the manner prescribed by statute. This principle is supported by a line of decisions of this court cited in the opinion, and has been subsequently followed in *Giles v. Miller*, 36 Neb. 346; *Clarke v. Koenig*, 36 Neb. 572; *Violet v. Rose*, 39 Neb. 660; *Havemeyer v. Dahn*, 48 Neb. 536. If the homestead in controversy had been selected from the lands of the deceased wife, on the death of the wife, the homestead right would have descended to the husband for life, *whether any children had been born of the marriage or not*. In *Dorrington v. Myers*, 11 Neb. 388, this court said: "Neither the death of the wife, nor her abandonment of her husband, nor the arrival at full age and departure from the parental roof of all the sons and daughters, would have the effect of dismantling the homestead of the protection of the exemption law." In *Galligher v. Smiley, supra*, the court held that the homestead right was beyond the reach of execution. In the above case, REESE, C. J., in the body of the opinion, says: "At the time this homestead right was acquired, by a compliance with the provisions of the law, the whole of the tract now in dispute was exempt from sale so long as its occupancy continued. While the judgments were liens, for the payment of which (if not allowed to become dor-

mant) the property was pledged, yet the homestead character could not be molested for the purpose of enforcing their payment. * * * The right could not be diminished by law without the consent of defendants. *McHugh v. Smiley*, 17 Neb. 620, 626; *DeWitt v. Sewing Machine Co.*, 17 Neb. 533. For twenty years perhaps, and during the whole time of the existence of the indebtedness, the right could not be questioned. The land was included within the corporate limits of the city by law, and without the consent or procurement of defendant. His rights could not be diminished thereby." *Bassett v. Messner*, 30 Tex. 604; *Nolan v. Reed*, 38 Tex. 425; *Barber v. Rorabeck*, 36 Mich. 399; *Ham v. Santa Rosa Bank*, 62 Cal. 125. In *Galligher v. Smiley, supra*, a 70-acre tract of land occupied as a homestead was brought within the city of Omaha by the extension of the city limits, and was attempted to be sold under execution. It was held that the homestead character of the land could not be changed without the consent of the occupant, and that the land could not be sold, although worth $200,000.

Except where it is narrowed by the qualification implied by the term "exemption," the word "homestead" is used in the act of 1879 in its popular sense to designate a *parcel of land on which the family resides*. The section under consideration enables the creditor to reach the *surplus* above $2,000. That section, therefore, is for the *benefit of the creditor*, as well as for the benefit of the head of the family who claims the "homestead exemption." It would seem that a consideration of the entire act makes it clear that the legislature intended the limitation of value to apply only in favor of creditors, and not to a homestead succession to the heirs or devisees. The court is authorized, on the petition of the creditor, to order a sale by execution only when the land "exceeds in value the amount of the homestead exemption," and prohibits the receiving of any bid "unless it *exceeds* the amount of the homestead exemption." *There can be no sale unless there is such excess*. By section 12 the sum to

be paid the claimant, where the whole tract is actually sold, is designated as "the amount of the *homestead exemption.*" In five subsequent sections of this same act of 1879 the limitation of pecuniary value of the homestead is six times referred to as the "homestead exemption." These references apply in favor of creditors only. These terms are not applied in connection with the words heirs or devisees. Sections 4 and 17 substantially re-enact the provisions of the act of 1877. Section 4 protects the homestead and the family of a married person against the domination of a husband or wife who is seized of the record title. The legislative policy implied has no necessary relation to the *separate* policy giving some measure of protection to creditors. It is entirely rational and consistent for the act to make a pecuniary limitation as to the creditors, and *no limitation as to heirs or devisees.* Because the pecuniary limitation is applied in one case is no reason whatever that it should be in the other case. The legislative policy embodied in section 4 applies with equal force seemingly to section 17. It required section 17 to completely forbid the domination of the homestead estate by the holder of the legal title. The shelter of the family becoming destroyed upon the death of the husband or wife holding the legal title, the survivor and the minor children would be subject to be dispossessed of their home, *although no rights of creditors should be involved.* There is no pecuniary limitation attaching to the provision forbidding the homestead to be conveyed or encumbered except by deed executed and acknowledged by both husband and wife, or to the provision for survivorship on the death of the person from whose property it was selected. It is not a certain amount of money which the surviving spouse gets the use of.

The former acts were repealed, and, when the legislature of 1879 drew up a permanent form of the homestead law, it used the word "homestead" in creating an absolute disqualification of the husband or wife from whose property it was selected to encumber or alienate the home-

Meisner v. Hill.

stead by a voluntary deed or devise, and preserved in favor of *creditors* only the limitation as to value. In the mind of the legislator there is the protection of the "homestead exemption" and the homestead itself, and sections 4 and 17 of the act offer protection against the domination of the person from whose property the homestead is selected, and *without any reference whatever to its pecuniary value*, and that means the protection of the homestead itself. There are two ideas here: (1) A place for the homestead claimant where he and his family are safe as to *everybody* if the place is not worth more than $2,000; and (2), if it does exceed $2,000 in value, then safe as to everybody except the creditor. Now, in this particular case there is no creditor, and therefore the homestead is a homestead as against *everybody*. Did the legislature intend, then, to turn the widow out because the husband is dead and the children have gone? What legislature would say, "We will make a law to apply to our widows when we die, and to our sisters when they have become widows and to our mothers when our fathers are dead and buried and the mothers are left alone in the old house, and we will say that these wives as they become widows are to be turned out of the homes they have occupied and in which the children have been raised, and they must find new and strange homes in which to finish their lives, so that the other heirs may each receive a few dollars more from the immediate distribution of the estate?" If no future legislature in Nebraska would do such a thing as that, then it would seem that no Nebraska legislature has done it. The right to dispossess the widow of the homestead selected from the property of her deceased husband is not written in the statutes.

It is contended that because this court in the case of *Tyson v. Tyson*, 71 Neb. 438, rendered a decision in conflict with the doctrine announced, therefore the will of the legislature should be ignored, and that an inadvertent mistake should bind the court in the future to a doctrine by which the surviving wife or husband is to be put

out of the old homestead. In *Tyson v. Tyson, supra,* Peter Tyson died intestate in Washington county, and the plaintiff in error was the widow, and the defendant in error was the only child. The intestate died seized of a farm containing 156¾ acres. The petition which was filed in the county court alleged that Mary Ella Tyson claimed a homestead interest in said premises, and occupied the dwelling-house and buildings under her claim that the same was the homestead of the decedent and herself during the lifetime of said decedent and at the time of his death. The petition was filed by the son, who alleged that the homestead consisting of the dwelling-house and outhouses and the said land exceeded $2,000 in value, and that Mary Ella Tyson was only entitled to use and occupy said dwelling-house and outhouses with so much land upon which the same was situated as, taken together with said buildings, shall equal in value the sum of $2,000, and no more. It is also alleged that, in addition to said homestead, the said Mary Ella Tyson was entitled to dower interest in said land to the extent of one-third thereof; that, under the claim of homestead and dower, she wrongfully excluded the petitioner from said premises, and claimed the whole of said real estate as homestead and dower; that she refused to account for the rent of that portion not included in the homestead interest to which she was entitled; that said real estate was of the value of $11,750, and exceeded the homestead in value by $9,750. It was also alleged that Mary Ella Tyson claimed the right to receive from said estate the sum of $35 a month as support, and that she was drawing the same. There was a prayer for the appointment of three persons to set off the homestead and dower of the plaintiff by metes and bounds, the former not to exceed $2,000 in value. The answer of Mary Ella Tyson admitted receiving $35 a month for her support, and claimed the exclusive right to use the land; alleged said land was the homestead of Peter Tyson and Mary Ella Tyson at the time of the death of said Peter Tyson, and that said home-

stead at the death of said Peter Tyson vested in his surviving wife, and that the son, Amasa F. Tyson, had no interest in the land during the lifetime of said Mary Ella Tyson. The answer also alleged that the county court had no right or power to adjudicate the title to said land. Upon the hearing, the county court found that Mary Ella Tyson had a homestead in the premises, or in so much thereof as should not exceed in value $2,000, and was entitled to dower therein, and appointed three persons to assign her dower and homestead by metes and bounds. From the decree rendered by the county court, Mary Ella Tyson prosecuted error to the district court, where the decree of the county court was affirmed, and the case was then brought to this court by petition in error.

It will be noticed that there is a difference between this case and the *Tyson* case.    (1) In the *Tyson* case there was, in addition to the consideration of any homestead claim, the claim that "the said Mary Ella Tyson is entitled to *dower* interest in said land to the extent of one-third thereof, and is entitled to have the same set aside." This was alleged in the petition as above quoted. It was also stated in the opinion that "the prayer is for the appointment of three persons to set off the homestead and dower of the plaintiff by metes and bounds."    (2) In the instant case there is no claim of dower. The fact that *dower* and *homestead* and the support of $35 a month were all claimed out of this estate of 156 acres no doubt tended to confuse the issues, and perhaps to cloud the minds of all connected with the case. In the *Tyson* case, it was said in the body of the opinion: "This court held, as we have seen, that, in order to oust the jurisdiction of the county court, the right of the applicant must be disputed by presenting an *issue of fact* which, if established by proof, would defeat her claim, and such issue must be one which the county court by its organization is unable to try." It would seem to be absurd that, if the *law* ousts the jurisdiction of the county court, there should be any contention that it presented a *different* question

Meisner v. Hill.

from an issue of fact ousting such jurisdiction. If the jurisdiction is ousted, that is enough.

The learned commissioner who writes the opinion follows up his first mistake with a second one. He proceeds to discuss the section relating to the exemption of $2,000 from judgment liens, and fails to reason upon the subject. He writes: "But it will not be claimed that, in a case of that kind, the surviving spouse would take a life estate in the excess by virtue of the homestead act. * * * Neither are we able to see that the surviving spouse has any greater rights when the claimant of the excess is an heir of the deceased instead of a creditor." What the learned commissioner says is a mere dictum. Perhaps the idea of the commissioner who wrote the opinion is derived from the fact that he may have supposed the contention made was not supported by the pleadings. One of the contentions was that a widow not owning a residence suitable to her condition in life might remain in the dwelling-house of her husband so long as she remained a widow without being chargeable with rent. He held this was not supported by the pleadings.

We are now met with a statement that, because of this opinion, this court shall continue to stand where all are agreed that it is wrong to stand. It is urged as a reason why the mistake made in *Tyson v. Tyson* should stand is that it has been the accepted idea of the bar and the judges for a number of years that the $2,000 exemption applied as well to the survivorship as to the creditor. It is said that it will make a change in the rule of property rights, and that there will be sufferers in consequence of it. The answer to that is that the woman who lives to be an old woman and loses her husband seldom marries again. The same is true of the man who lives to be an old man. It is the exception when he marries again. There is no reason that the heirs are likely to be crowded out, because at the death of the survivor the heirs go into full possession of the property. The survivor rarely has many years to live. We are all inclined to overestimate the

length of time we have to live. The pictures are hanging on the wall of most of those who have preceded us. They are gone and maintain the discussion no longer. In a few years more we shall all be gone, and there will be other occupants of our places. Perhaps no one may say with absolute certainty the number of years that the average survivor is likely to live, perhaps five, perhaps ten, not more than that. At the end of that time the heirs will come into the exclusive possession of that which he has inherited from the deceased wife or husband who has gone before the survivor. The thing contemplated as dangerous to the property rights is not dangerous at all, because it takes nothing permanently, and only maintains a meritorious use. In the interest of humanity this court should at once correct the mistake in *Tyson v. Tyson*, and declare the will of the legislature as it has been expressed. The right of homestead may survive in favor of the husband on the death of the wife, even though no children of the marriage are living (*Burns v. Keas*, 21 Ia. 257; *Ellis v. Davis*, 90 Ky. 183, 14 S. W. 74; *Roberts v. Greer*, 22 Nev. 318, 58 Am. St. Rep. 755), or though the children have removed from the homestead upon which he still resides (*Gray v. Patterson*, 65 Ark. 373, 46 S. W. 730), or though the children have attained their majority (*In re Feas' Estate*, 30 Wash. 51, 70 Pac. 270), or though he is not a housekeeper with a family.

The present value of Mrs. Meisner's homestead interest is found to be $1,464. She does not get this sum, because it is only the use of a $2,000 interest in the homestead that she gets, and, when she dies, the heirs of the deceased hold the property free and divested of any claim she may have once had. The interest on the present value, therefore, is all she may safely count on. Six per cent. on $1,464, the present value, would give her $87.84 per annum. The smallness of the matter is quite apparent from a consideration of the insignificance of this sum. From this it would seem that early in the history of the people of our state they passed a law which guaranteed to the

"family," so long as it was needed for that purpose, a homestead which shielded the young and the strong and the old and the feeble alike, and all in the interest of the home. Sections 17 and 4 of the act of 1879 contain a recognition of the principle that underlies all the legislation of the state upon the subject. It is the protection of the home, when once it is established, as long as it may be needed for any surviving husband or wife. The family is a unit of the state. The home protects it. As long as the family exists, the home should exist. This court has already said that the head of the family should be protected in the home, although the children have already grown to maturity and have left it. *Galligher v. Smiley,* 28 Neb. 189.

The judgment of the district court should be reversed.

FAWCETT, J., dissenting.

I am unable to concur in the majority opinion, for the following reasons:

The contest in this case is between plaintiff and the daughters of deceased by a former wife. At the time of his death, Mr. Meisner was the owner of the northwest quarter of section 36, township 10, range 13, in Buffalo county, worth, exclusive of the buildings, $16,000. He had erected thereon a dwelling-house of the value of $9,000. For 14 years prior to his death, this dwelling and quarter section of land had been occupied by Mr. Meisner and plaintiff as their home. At the time of his death, he left other lands of the agreed value of $531,088. By an agreement entered into between plaintiff and the daughters, a division of all of the lands, other than the quarter section referred to, has been agreed upon. It has also been agreed between them that plaintiff shall take the quarter section in controversy at an agreed valuation of $25,000, and account for the same under the decision to be rendered in this case; that is to say, she is to be given credit for the value of her homestead interest as found by the court, and account for all in excess thereof

up to the $25,000. The question decided by the district court, and before us for review, is the construction to be placed upon sections 1 and 17 of the act approved February 26, 1879, and in force after September 1 of that year. Laws 1879, p. 57. These two sections are as follows:

"Section 1. A homestead not exceeding in value $2,000, consisting of the dwelling-house in which the claimant resides, and its appurtenances, and the land on which the same is situated, not exceeding 160 acres of land, to be selected by the owner thereof, and not in any incorporated city or village, or, instead thereof at the option of the claimant, a quantity of contiguous land, not exceeding two lots within any incorporated city or village, shall be exempt from judgment liens, and from execution or forced sale, except as in this chapter provided."

"Section 17. If the homestead was selected from the separate property of either husband or wife, it vests, on the death of the person from whose property it was selected, in the survivor for life, and afterwards in his or her heirs forever, subject to the power of the decedent to dispose of the same, except the life estate of the survivor, by will. In either case it is not subject to the payment of any debt or liability contracted by or existing against the husband and wife, or either of them, previous to or at the time of the death of such husband or wife, except such as exists or has been created under the provisions of this chapter."

Succinctly stated, the question is: Does the $2,000 limitation, expressed in section 1, apply to exemptions against creditors alone, or does it also apply to the right of succession under the provisions of section 17? It is argued with great force by counsel for plaintiff that the language used in the different sections of the act indicate that the legislature had in mind what might be termed two homesteads—one, the actual homestead, and the other, the homestead which could be held as against creditors—and that the $2,000 limitation applies only to the latter.

33

The title to the act reads as follows: "An act to provide for the selection and disposition of homesteads, and to exempt the same from judgment liens, and from attachment, levy, or sale, upon execution or other process." It will be seen that the title recites that the act is "to provide for the selection and disposition of homesteads, and to exempt *the same*," not "the same *to the extent of $2,000*," but "*the same*"—that is to say, *the homestead*—from judgment liens, etc., indicating, I think, that the intention was to exempt the entire homestead, the selection of which the act following was to provide for, from judgment liens, etc. Section 1 of the act reads: "A homestead not exceeding in value $2,000, consisting of the dwelling-house in which the claimant resides," etc. If we read this clause of section 1 with the same punctuation appearing in the title, which would place a comma after the word "homestead," the clause would then read, "A homestead, not exceeding in value $2,000, consisting of the dwelling-house," etc. That punctuation, or reading it in that manner, would seem to indicate that the $2,000 relates to the entire homestead, and not to a subsequently to be determined portion thereof. That this is the construction which has been placed upon this act for over 30 years cannot be questioned. Estates have been divided and lands partitioned, all over the state, under that construction.

In *Meek v. Lange*, 65 Neb. 783, suit was brought to recover damages for the breach of an executory contract, made by the husband without the assent of his wife, for the sale of the homestead. In the syllabus it is held that an executory contract for the sale of the family homestead. to which the wife is not a party, is invalid, and its nonperformance does not furnish a basis for recovery of damages for the loss of the bargain. On page 788, speaking through Mr. Commissioner HASTINGS, it is said: "Doubtless, in case of bad faith, or where the action of defendant has caused special damages, a right of action would arise for such injury. But it would seem entirely inconsistent

to allow a recovery of damages for the loss of a bargain which plaintiff made in full view of evident facts with one whom those facts rendered incompetent to sell the property. As above stated, only damages for loss of the bargain were allowed in this judgment. The judgment, therefore, cannot stand. Possibly the plaintiff is entitled to nominal damages for the absolute refusal to convey any of the premises, as they were found to be worth more than $4,000. The homestead right evidently does not protect defendant as to more than $2,000 worth." It will be observed that that was not a case involving the question of exemptions against creditors, but that it involved the whole right of homestead, which right the court there said did not protect defendant as to more than $2,000.

Upon the third hearing of *Teske v. Dittberner*, 70 Neb. 544, the last two paragraphs of the syllabus read:

"(10) A parol agreement made by the husband with a third party to devise property embraced within a homestead, like an agreement to convey the reversionary estate, is in conflict with the provisions of the homestead act and is not specifically enforceable, even though substantial performance of the contract by the promissee may have taken place.

"(11) When such an agreement includes other land than that included within the homestead, the contract may be specifically enforced except as it affects the homestead property."

In the opinion, on page 550, it is said: "In speaking of the homestead, we wish to be understood as having reference to that part of the real estate in controversy which consists of the dwelling-house, in which the promisor, Frederick Teske, and his family, at the time, resided, and its appurtenances and the land on which the same are situated, not exceeding 160 acres in area, nor $2,000 in value." Here again this court, in a case where the question of the rights of creditors was not involved, limited the homestead to the dwelling-house and its appurtenances, and the land on which the same are situated, not exceeding 160 acres in area, *"nor $2,000 in value."*

In *Tyson v. Tyson*, 71 Neb. 438, the third paragraph of the syllabus reads: "In a contest between the widow and the heirs at law as to the extent of her homestead in suburban lands, she is entitled to a homestead not exceeding 160 acres in area and $2,000 in value." In the opinion, on page 443, it is said: "Another contention of the plaintiff is that she is entitled to hold and occupy the entire tract of land as a homestead, regardless of its value, and this contention is supported by a more plausible argument than we should have thought possible in view of the plain provisions of the homestead act. A homestead within the meaning of that act, chapter 36, Compiled Statutes (Annotated Statutes 6200), is defined and limited by the first section thereof, which is as follows: (Section 1 of the act set out.) The first limitation imposed is that the homestead shall not exceed $2,000 in value; the next, that it shall not exceed 160 acres of land not in any incorporated city or village, or, in lieu thereof, not exceeding two lots within such city or village. The head of a family might actually occupy more than 160 acres of land, not in an incorporated city or village, or more than two lots in such city or village, as a family homestead. But it will not be claimed that, in a case of that kind, the surviving spouse would take a life estate in the excess by virtue of the homestead act. The limitation as to value is as certainly and positively fixed by statute as the limitation as to quantity. Neither are we able to see that the surviving spouse has any greater rights when the claimant of the excess is an heir of the deceased instead of a creditor. The homestead, which vests in such survivor for life, is the identical homestead in quantity and value defined in section 1 of the act. The statute recognizes none other." It will be seen that the question under consideration in the case at bar was squarely before the court, and was considered and squarely decided in that case.

In *Wardell v. Wardell*, 71 Neb. 774, the third paragraph of the syllabus reads: "A homestead exemption is by the law of this state limited to the value of $2,000, and

if, upon the death of a husband, the dwelling and the tract of land adjacent thereto, selected from his estate and occupied by himself and family as a homestead, exceed that value and are so situated that the dwelling together with the grounds upon which it stands, and not exceeding that value, cannot be set apart from the residue of the tract, no legal estate in the land, or in any part of it, passes to the widow and heirs under the homestead act, but in lieu thereof an equitable interest to the value of $2,000 in the entire tract does pass to them thereunder." In that case the land consisted of 120 acres, including the family dwelling-house, the whole being of the value of about $14,000. Upon the trial it was found that the value of the dwelling-house alone was $3,000, and of the build-- ings appurtenant to it, $3,500, and of the equitable title to the land, $7,200, and that the premises were not sus- ceptible of division or partition, so as to permit the dwell- ing-house and the ground upon which it was erected, of a value not exceeding $2,000, to be set apart as a home- stead. The district court thereupon decreed a sale of the entire tract and the investment of $2,000 of the proceeds thereof at interest during the life of the widow, she to receive the interest and income thereof until her death, the principal to then descend to the heirs at law of the decedent. The widow prosecuted error to this court. Her contention was that the provisions of the statute for ap- praisement and setting apart of the homestead during the lifetime of the person from whose estate it was selected, or the sale of it, in instances in which it is not susceptible of division, and the setting apart of $2,000 of the proceeds of the sale, are not applicable after his death, and that, hence, the statutory restriction as to the value of the exempt property ceases with that event, "and that there- from the entire premises occupied as a homestead, to the whole extent of the territorial limits prescribed by statute, acquire the character of exemption regardless of values." In the opinion, on page 777, it is said: "We think this reasoning is at fault in overlooking the fact that that

which constitutes the homestead, and that alone, therefore, which passes to the surviving spouse, in cases of this kind, is not necessarily any defined tract of land, but only so much of a definable tract, if any, as, including the dwelling house and appurtenances, shall not exceed $2,000 in value." The judgment of the district court was affirmed. It is said that the language quoted from the last above case is *obiter dicta*, as applied to this case, for the reason that there the right of creditors was involved. The record in that case, however, shows that the creditors were general creditors of the decedent who had not obtained any lien upon the land prior to his death, and I am inclined to think that, if the right of succession is as contended for by the plaintiff here, it would have been good in *Wardell v. Wardell*, for the reason that, as insisted in that case, the right of succession attached prior to even the assertion of any debts against the decedent. But whether it be *dicta* or not, it shows the view of the learned commissioner who wrote that opinion, concurred in by his two able associates, and approved, without dissent, by the court.

In *Jerdee v. Furbush*, 115 Wis. 277, 279, 281, the court had before it the question of the rights of a grantee of a homestead under a conveyance made without the wife's signature. In the opinion the court say: "We cannot at this late day decide that as a new question. If it were otherwise, a different result of this appeal might occur than the one we have decided upon." The opinion then cites and comments upon two prior decisions of the court, and adds: "The law has thus stood for nearly a quarter of a century, and whether the court's construction of the statute was right or wrong it must now be considered the law the same as if the idea involved were literally expressed in the statute. It relates to property. It has become, by the lapse of time, a rule of property, which, by well-settled principles, can only be rightly changed by legislative enactment." In conclusion the court say: "It follows from what has been said that (naming the two

cases referred to) rule this case. To try to distinguish one case from another upon the facts, where the ruling principles in one are plainly identical with those in the other, creates uncertainty and confusion in the law. That should be avoided as to any subject, but particularly in respect to titles to real property." The reasons there given for following the former decisions appeal to me as eminently sound. The ruling principles in the four former opinions of this court are plainly identical with the present case, and to attempt now to distinguish one from another upon the facts would, as stated by the Wisconsin court, "create uncertainty and confusion in the law."

Our former holdings, together with a similar and statewide construction of the act by the district courts for more than 30 years, should set the matter at rest. I am unwilling at this late day to disturb that which for so many years has been considered settled. I therefore conclude that the limitation of $2,000, expressed in section 1, is not restricted to exemptions against creditors, but also applies to the right of succession under the provisions of section 17, and insist that a construction of a statute, established by a line of former decisions of this court, uniformly followed by the district courts, and long acquiesced in by the bar, should not, ordinarily, be disturbed, even though the court, as subsequently constituted, might have placed a different construction upon such statute, **if** before it for the first time.

BARNES and LETTON, JJ., concur in above dissent.