SIMEON PHILLIPS, PLAINTIFF, V. ISAAC C. BISHOP ET AL., APPELLEES, IMPLEADED WITH J. N. PAUL, APPELLANT.

31 853
35 487

[FILED MAY 6, 1891.]

**Homestead:** MORTGAGE: FAILURE OF WIFE TO ACKNOWLEDGE. Where a mortgage was given by a married man upon several parcels of real property, including the homestead of the mortgagor upon which he then resided with his family, and the wife of the mortgagor, then occupying the homestead with him, did not acknowledge the mortgage before any officer authorized to take acknowledgment of deeds, in an action brought by an assignee of the said mortgage, *held*, that the mortgage created no lien upon the homestead.

APPEAL from the district court for Howard county. Tried below before TIFFANY, J.

*Paul & Templin,* and *O. A. Abbott,* for appellants, cited: *Pereau v. Frederick,* 17 Neb., 119; *Monroe v. Poorman,* 62 Ill., 523; *Graham v. Anderson,* 42 Id., 519; *McPherson v. Sanborn,* 88 Id., 152; *Fitzgerald v. Fitzgerald,* 100 Id., 385.

*Thompson Bros.,* and *T. T. Bell, contra.*

COBB, CH. J.

This was an action to foreclose a mortgage brought in the district court of Howard county by Simeon Phillips, plaintiff and appellee, against Isaac C. Bishop, Ida Bishop, The Nebraska Loan & Trust Company, A. G. Kendall, The Chicago Lumber Company, and N. J. Paul, defendants and appellants.

N. J. Paul filed an answer and cross-petition setting up, among other things, the execution and delivery by Isaac C. Bishop and Ida Bishop of a certain mortgage securing

the payment of certain notes of Isaac C. Bishop. That said notes were dated on the 10th day of October, 1887, one payable March 10, after date, for the sum of $1,000, with ten per cent interest per annum from maturity until due from the 10th day of March, 1889, the amount due thereon being the sum of $600.33, and the other of said notes for the sum of $4,500, due and payable March 10, 1888, with interest at the rate of ten per cent per annum from maturity until paid, upon which note the sum due on the said 10th day of March, 1889, was $4,950; that for the purpose of securing the payment of the two said promissory notes, and the interest thereon as it should mature, the said Isaac C. Bishop and Ida Bishop executed and delivered to A. G. Kendall, this defendant's assignor, a certain mortgage deed on the southwest quarter of section 32, township 15 north, of range 10, and the southwest quarter of section 29, township 15, range 10 west of the 6th P. M., all in Howard county, Nebraska, including in said mortgage all rights of homestead of the said Ida Bishop in and to said premises, upon the condition that the said notes aforesaid should be paid according to the tenor thereof; that said mortgage was duly acknowledged before W. L. Thomp-Thompson, a notary public in and for Howard county, Nebraska, and after such acknowledgment said mortgage and notes secured by the same were delivered by the said I. C. Bishop and Ida Bishop to the said A. G. Kendall; that said mortgage was duly recorded on the 11th day of October, 1887, in book of mortgages " M " on page 258 of the records of Howard county, Nebraska; that no action at law or otherwise had been brought for the recovery of the amount due on said note and mortgage, nor had the debt, or any part thereof, been collected or paid. The prayer of said cross-petition was that said I. C. Bishop and Ida Bishop be required to answer the said cross-petition, and that the equity of redemption of the said defendants, I. C. Bishop and Ida Bishop, in and to the said southwest quar-

ter section 32, township 15, range 10, and the southwest quarter of section 29, township 15, range 10, be forever barred and foreclosed, and that this defendant have an order for the payment of this defendant's said mortgage debt out of any surplus that may remain after the sale of said mortgaged property, after paying the costs of this action and the mortgage of plaintiff, and for a deficiency judgment against Isaac C. Bishop upon the said notes aforesaid, and for such other full and complete relief in the premises as equity and good conscience require. Afterwards, on the 15th day of January, 1890, I. C. Bishop filed an answer to the cross-petition of N. J. Paul as follows, to-wit: Denies that he is indebted to the said N. J. Paul in the sum of $600 on the first cause of action set up in the cross-petition of N. J. Paul, and the sum of $4,950 as mentioned in said second count, or either of the said claims as claimed in said cross-petition, or in any other sum or amount; denies that said mortgage was executed, signed, acknowledged, and witnessed by these defendants as in said cross-petition mentioned; denies that said Ida Bishop ever acknowledged the said mortgage either before the said W. L. Thompson or any other notary public or officer authorized to take acknowledgments, either as mentioned in said petition of said Paul or otherwise, either jointly with this defendant or separately; denies they ever signed the same in the presence of C. H. Paul, or that the said last named Paul ever witnessed or saw her sign her name thereto, and was never requested to do so; denies that the said Ida Bishop ever received or had any consideration for the signing of said mortgage; that in truth and in fact she did not and was not to receive any consideration for the signing of said mortgage; denies she ever went before the said W. L. Thompson, notary public, and declared the signing of the said mortgage to be her act or deed, or that she was requested so to do by the said Kendall or any other person, or that she was in the presence of the said notary public

when the said pretended certificate of acknowledgment was made by the said notary public, or that the same was made at her request, instance, or procurement in any manner.

For further answer this defendant denies that said N. J. Paul purchased the said notes or either of them as stated in said cross-petition or otherwise, before due or at any other time; denies that the said Paul is the owner thereof; denies that said Paul is the real party in interest in the cause of action set up in this cross-petition or either of them, or has been. And for further answer to the said cross-petition this defendant states that he, the said Isaac C. Bishop, and Ida Bishop are husband and wife and have been for the last sixteen years; that the issue of said marriage are six children; that in the spring of 1874 said I. C. Bishop entered the southwest quarter of section 32, 15, 10, as a homestead under the homestead laws of the United States; that ever since said time the said I. C. Bishop and Ida Bishop, with their family, have resided upon and cultivated the said 160 acres of land as their homestead, and did at the time said mortgage was and is dated and claimed to have been executed and acknowledged; have owned and claimed the same as such homestead ever since the said entry of 1874 and have not had or occupied any other; that the same is not within the corporate limits of any town, village, or city, or was not at the date of the said pretended mortgage or acknowledgment, and was not or is not of the value of over $2,000 over and above the mortgages which were unpaid and are legal binding liens on said homestead, at the date of said mortgage and pretended acknowledgment; that said mortgage in the said cross-petition mentioned is null and void, is a cloud upon said described land and especially upon the said homestead; that these defendants have no adequate remedy at law to remove the same.

Further answering, defendant I. C. Bishop states: That on the 10th day of October, 1887, and during all the years '87, '86, '85, and at all of the times hereinafter mentioned,

the St. Paul National Bank, mentioned in said cross-petition and in the notes therein described, was and is a corporation duly organized and doing a general banking business in the city of St. Paul, Howard county, Nebraska, under the banking laws of the United States; that during all the times aforesaid the said A. G. Kendall was a stockholder and cashier of the said bank, and said N. J. Paul and A. C. Rowell stockholders and officers of said bank, and the said I. C. Bishop was not in any manner indebted to either the said Kendall, Paul, or Rowell, but was indebted to the said bank; that said notes were made payable to the said Kendall and Rowell at the request of said bank officers for the convenience of said bank by and with the consent and connivance of the payee in each of the notes hereinbefore or hereafter mentioned, for the use and benefit of said bank, and was now held by the said Paul for the use and benefit of said bank, and are the property of said bank, and for the purpose of evading the bank laws of the United States, and against receiving and contracting for illegal and usurious interest, under the laws of the United States and this state, and for no other or different purpose, and to which said N. J. Paul has had full knowledge thereof. Admits that the defendant I. C. Bishop made payments of said notes in question, that he signed the notes, and acknowledged the mortgage in said petition mentioned; that the said notes were for the balance claimed of said bank to be due and owing them from this defendant, to-wit: for usurious interest and money borrowed and advanced by the said bank to this defendant as hereinafter stated. Said answer then details a large number of payments, claimed to have been made under the usurious contract set out; that, as stated, defendant I. C. Bishop has paid the said bank as usurious interest on the transactions hereinbefore stated the sum of $1,471.64; that defendant Bishop should have credit for the sum of $2,943.28, the same being double the amount of the usurious interest paid as hereinbefore

stated by this defendant to the said bank, and that the same should be offset and allowed on any indebtedness that the court may find there is due and owing said Paul or the said bank.

Wherefore defendant prays that he may be allowed the above credit of $2,943.28, after an accounting has been had on the claim set up in this defendant's answer and in the answer and cross-petition of the said N. J. Paul; that the said mortgage mentioned in said answer and cross-petition of N. J. Paul may be declared null and void and may be ordered canceled on the record of said Howard county, and for such other and further relief as may be just and equitable, and for the costs of this action.

And afterwards, on the 20th day of December, 1889, Ida Bishop filed her separate answer alleging that she is the wife of I. C. Bishop and has been for the last sixteen years; denying any knowledge of the execution of the notes or mortgage by I. C. Bishop; denies "that she ever acknowledged" the said mortgage in any manner; never admitted the execution or signing thereof to be her voluntary act and deed, either before the said W. L. Thompson, notary public, or any other person or officer; denies that she ever signed the said mortgage in the presence of the said Thompson or any other person as claimed in said cross-bill, or in any other manner at the time therein stated, or at any other time, or that she ever received any consideration for so doing, or that she ever authorized any one else to do so for her; claims the southwest quarter of section thirty-two (32), township fifteen (15), range ten (10) as their homestead; that said homestead is not of the value of over two thousand ($2,000) dollars over and above the first mortgage on said premises.

To the answer of Ida Bishop the defendant, N. J. Paul, filed a general denial. To the answer of I. C. Bishop the said N. J. Paul and the St. Paul National Bank filed a reply admitting that the St. Paul National Bank is a corpo-

ration duly organized and doing business under the laws of the United States; admits that A. G. Kendall and N. J. Paul now are, or at times have been, stockholders and officers of said bank; that A. C. Rowell at no time has been a stockholder of said bank and connected with the management thereof, and the notes in controversy were made to the said N. J. Paul for the use and benefit of said bank and for the convenient transaction of its business, and denies each and every allegation in said answer contained, in manner and form as the same are therein stated and charged.

There was a trial to the court, which ordered and adjudged that N. J. Paul, within thirty days, execute, acknowedge, and deliver to the clerk of the court, for the use of Isaac C. Bishop and Ida Bishop, a release of the mortgage described in his cross-petition so far as the same covers, or appears of record to cover, the land described, and that failing so to do a duly certified copy of this decree, recorded in the office of the county clerk of Howard county, operate as such release; and that said Paul recover of Isaac C. Bishop the sum of $4,223.71, together with the costs of this suit; and if said Bishop fails after twenty days to pay said sum, with interest at the rate of seven per cent per annum, that the sheriff of Howard county sell the lands and tenements described as upon executions at law, subject, nevertheless, to the incumbrances now existing thereon, aggregating $1,500 with accrued interest, if any, and from the proceeds of the sale pay the costs and pay the said N. J. Paul $4,223.71, with interest, and bring the residue into court to await the order of the court. To which judgment the defendant, N. J. Paul, excepted on the record, and appealed the cause to this court.

At the hearing, the district court found adversely to the claim set up by the appellees, N. J. Paul and the bank, in their cross-bill as mortgagees of Ida Bishop, the wife of Isaac C. Bishop, to the southwest quarter of section 32,

township 15, range 10, as the homestead of that family, and of a value not to exceed $2,000, on the ground that the wife had not formally acknowledged the execution of mortgage. There was a conflict in the testimony of witnesses to the fact. The weight of evidence satisfied the court that the wife of the mortgagor was not present at the time and place, nor was she in 'the town when and where the mortgage was purported to have been signed and acknowledged, separate and apart from her husband by her. She had, however, previously signed her name to the instrument, without witnesses, and without any acknowledgment in fact. On this ground the mortgage of the homestead described was held to be void.

Counsel contend that the answer of the wife "is but a simple denial that she ever acknowledged the mortgage;" and as to whether a general denial is sufficient to raise the issue against the presumption of law, cites the rule held in *Pereau v. Frederick*, reported in 17 Neb., 119, that "a certificate of acknowledgment of a deed, or mortgage, is *prima facie* correct, and cannot be impeached except for fraud, collusion, or imposition." We find, however, in the addendum to counsel's brief, as well as in the record, that "on December 20, 1889, the wife filed her separate answer under oath, alleging that she is the wife of Isaac C. Bishop, and has been for the last sixteen years; denying any knowledge of the execution of the notes and mortgage, and denying that she ever acknowledged the mortgage in any manner, or that she ever admitted the signing, or execution of it to be her voluntary act and deed, either before the notary public who certified it, or before any other person or officer, and denied that she executed it in the presence of W. L. Thompson, or that of any other person, as set up in the cross-bill of the appellees; she denied that she ever received any consideration for so doing, or that she ever authorized any one to do so for her." This denial would seem to be specific and particular rather than

simple and general.    The consideration of the mortgage is admitted to have been so grossly tainted by usury as to constitute an imposition and deception against her, taking the defense set up out of the rule cited.    It is admitted that the courts of Illinois, Iowa, and Michigan have held that in the absence of proof of fraud and collusion on the part of an officer taking an acknowledgment of a deed, or mortgage, the officer's certificate in due form must prevail over the unsupported testimony of the mortgagor that the same is false or forged.    And while the answer of the wife, in this instance, does not specifically allege fraud and collusion on the part of the officer, it does inferentially, when it is apparent that she never appeared before him, and that he never took her acknowledgment as certified by him. The proof of that fact is fairly supported; her *alibi* is fairly maintained.

Counsel for appellees cite still more weighty reasons and authority, considering that the mortgage was to secure a debt for money loaned, though usurious, and the wife had placed her signature to it, though denying the *bona fides* of the act.

In Thompson's treatise on Homesteads and Exemptions, sec. 533, it is said "that the power of the wife to go behind her acknowledgment of deeds of this character has been freely discussed, and the courts in Texas have held that she has the right to show that her signature was procured through fraudulent representations and false promises. (33 Tex., 86.)    And, *a fortiori*, she has the right when she has signed such deed under duress. (11 Kan., 19.)    But Justice Campbell, in delivering the opinion of the supreme court of Michigan in the case of *Norton v. Nichols*, 35 Mich., 150, where the sole objection to the acknowledgment was that it was taken in the presence of her husband, and it was neither averred nor shown that the mortgage was executed by her unwillingly, declared in forcible language: 'There is no equity whatever in the bill, which, on its face, is an at-

empt, without any merit, to evade an honest claim which could never have been created unless the complainants had both done what they could to create confidence in it. Whatever may be the rule concerning the formalities needed to bind married women, there is no doubt they may be estopped by their deliberate conduct as well as any one else.'"

It will be observed that the analogies in the examples cited in this authority are not complete with the case at bar.

In a suit in equity brought by a wife to avoid a mortgage on the homestead of her husband during their family occupation of it, on the ground that she never knowingly signed or acknowledged it, the supreme court of Michigan again said: "All presumptions in cases of this kind must be treated with reasonable respect to the improbability of misconduct in a reputable officer, or of forgery which he ought to have discovered if it existed; and the burden of proof was on the complainant to make out a plain case. The evidence was conflicting; the officer swore distinctly as to the fact of taking the acknowledgments; there was corroborating evidence, and the bill was dismissed." (*Hourtienne v. Schnoor*, 33 Mich., 274.) Counsel contend that "the testimony of an officer who has taken an acknowledgment can add nothing to his certificate." In the case cited not only was the testimony of the officer required, but corroborating evidence was received by the court. In the present case the officer's deposition was offered on the trial, and overruled by the court on grounds not stated in the record, but without exceptions.

In the case of *Morris v. Sargent*, 18 Iowa, 90, a different conclusion was reached. A husband borrowed $11,250 on a deed of trust of his homestead, purporting to have been executed jointly by himself and his wife. The land having gone to sale under the conditions of the deed of trust, the wife, joined by the husband, brought a bill to

cancel the deed of the purchaser. The husband testified that he forged his wife's name to the deed of trust. The wife testified that she neither executed nor consented to have the deed executed, and that at the time it purported to have been made she was sixteen miles away. The notary testified that both the husband and wife executed it before him, but that his memory as to the circumstances was not distinct. Expert testimony as to the wife's signature was conflicting. The justices of the supreme court, by a comparison of signatures with those admitted to be genuine, in connection with the other testimony, came to the conclusion that the signature to the deed was not hers, but was that of her husband, and sustained the bill; but conceded the hardship of the doctrine which overthrew the *prima facie* effect claimed for the officer's certificate, and conceded that the burden was upon the plaintiffs to repel the force of the certificate.

However harsh it may be deemed by the creditor to be deprived of an apparent mortgage security on a debtors homestead, superinduced by the debtor himself, it is the law of the state, never dispensed with, that "the homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife." (Comp. Stats., chap. 36, sec. 4; 17 Neb., 629; 19 Id., 211; 20 Id., 109; 25 Id., 175.) The wife cannot be deprived of her homestead by the husband's mortgage. (19 Id., 631.) Deeds and mortgages of real estate, except leases for one year or less, must be signed by the grantor in the presence of one competent witness, who shall subscribe his name as such, and the grantor shall acknowledge the instrument to be his (or her) voluntary act and deed, before a judge, clerk of a court, justice of the peace, or notary public, only within their respective territorial jurisdictions. (Stat., chap. 73, secs. 2, 3.)

The acknowledgment required is the appearance of the

grantor, before the officer, in the presence of the witness, his there signing the instrument and declaring it to be his (or her) voluntary act and deed. The statute thus requires the husband and wife, who convey or incumber their homestead, to execute and acknowledge the deed or mortgage, and this requirement is essential to the validity of the instrument. (*Aultman & Taylor Co. v. Jenkins*, 19 Neb., 211.)

Applying the law to the facts in evidence, we think that the district court was fully justified in its conclusions that the wife did not acknowledge the execution of the mortgage, that she signed it without consideration, and that it is without legal effect as to the homestead described.

As to the remaining question of usurious interest, involved in the notes secured by the mortgage, set up by Isaac C. Bishop, his counsel in their brief state that he only sought to recover on the trial, as a set-off to the principal, and only did recover the sum of the usury paid on the notes, as provided by sec. 5, chap. 44, of the Statutes of this state. We shall therefore leave that question as the trial court found it. The decree of the district court is

AFFIRMED.

THE other judges concur.