GOTTLIEB STORZ, TRUSTEE, APPELLEE, V. HENRY S. CLARKE, JR.: MYRTA E. CLARKE, APPELLANT: BURDETTE KELLEY, RECEIVER, CROSS-APPELLANT.

FILED OCTOBER 8, 1928. No. 25915.

*Morsman & Maxwell,* for appellant.

*Keller & Keller,* for cross-appellant.

*Smith, Schall, Wright & Sheehan, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and LANDIS, District Judge.

EBERLY, J.

This is an action in equity commenced in the district court for Douglas county, Nebraska, by Gottlieb Storz,

trustee, plaintiff, against Henry S. Clarke, Jr., and Myrta E. Clarke, husband and wife, and other defendants named. The purpose of the proceeding was to foreclose as a mortgage a certain warranty deed purporting to have been executed by the Clarkes and to convey to plaintiff trustee lots 13, 14, 15 and 16, in block 13, West End addition to the city of Omaha, Nebraska, and also that part of the alley vacated between lot 13 and lots 14, 15 and 16, which, together with other securities, were delivered, accompanied by a letter signed by Henry S. Clarke, Jr., alone, and which set forth that the securities accompanying the letter were to be by such trustee "held in trust for the benefit and use of B. F. Marshall, G. Storz, E. F. Folda, E. P. Meyers, O. H. Barmettler and A. W. Gordon, to protect against any loss that may accrue to them by reason of a guaranty," etc. It is alleged in the petition that this instrument, though in the form of a warranty deed, was delivered to the plaintiff as security for any payments which plaintiff and certain associates named in the petition might be compelled to make because of the execution by them of a certain guaranty in writing described therein as being for the benefit of Henry S. Clarke, Jr., and others. The amount of such payments which the beneficiaries named in this instrument were compelled to make, which were admitted by all parties, was also set forth in the petition as follows: "That * * * this plaintiff and those for whom he held said deed in trust as security * * * paid, and caused to be paid, were required to pay and did pay * * * the sum of $52,728.79, in full payment, * * * which amount was included" in said guaranty. In addition thereto there is contained in this pleading the usual allegations and prayer.

It seems the Clarkes answered separately; that one Burdette Kelley, as receiver of the First National Bank of Torrington, Wyoming, said to be claiming under a judgment rendered against defendant Myrta E. Clarke for $19,540 on May 27, 1926, intervened.

Certain cross-petitions and answers by other defendants, not necessary to the discussion of the questions con-

trolling in this case, were filed, and plaintiff joined issues by filing the necessary replies.

Trial was had to the court, and at the conclusion of this hearing a decree was entered which, so far as necessary to be considered here, may be summarized as follows: Determined the amount expended by plaintiff and associates as necessitated by the terms of the written guaranty which had been executed by them for which the instrument in suit was given to secure, and that no part of such sum had been repaid; that the instrument in suit, though in the form of a deed, was given as security and should be treated as a mortgage; that the real estate involved in suit was, at the time of the execution and delivery of plaintiff's deed, occupied by Henry S. Clarke, Jr., and his wife, with their family, as a homestead; that the record title to said property was in the name of Henry S. Clarke, Jr., but that prior thereto and on or about November 12, 1920, said Henry S. Clarke, Jr., executed and delivered to Myrta E. Clarke, his wife, a deed conveying to her said premises, but which deed was unrecorded at the time of execution and delivery of the deed to Gottlieb Storz, and was not recorded until December 1, 1924; that the guarantors in whose behalf the plaintiff sues had no knowledge of the existence of the deed from Henry S. Clarke, Jr., to Myrta E. Clarke, until after the deed filed by Henry S. Clarke, Jr., and Myrta E. Clarke to plaintiff had been accepted by him and recorded.

The district court further found that, at the time Myrta E. Clarke signed the deed in controversy here, it was in blank except as to the printed portion thereof; that she did not give Henry S. Clarke, Jr., authority to fill in the blanks above her signature, but that she knew and understood a mortgage was to be executed by Henry S. Clarke, Jr., and herself, and delivered to Gottlieb Storz, trustee, as security for any loss that the guarantors might sustain on account of the guaranty herein mentioned; that Henry S. Clarke, Jr., subsequently filled out the blank form by writing in a description of the property, signed the same,

and his acknowledgment was taken thereto by a notary public in his office, but that said deed was not acknowledged before the notary public by Myrta E. Clarke; also that when said deed was delivered to Gottlieb Storz by Henry S. Clarke, Jr., it did not contain the name of the grantee, but that accompanying the deed was written authority, signed by said Henry S. Clarke, Jr., alone, authorizing Gottlieb Storz to write in his name as grantee in such deed, which was complied with; that said instrument did not in any manner affect a $2,000 homestead interest in the premises vested in Myrta E. Clarke, but that the Clarkes are estopped from in any manner otherwise challenging the legality of the deed (except as to homestead), and that the plaintiff is entitled by reason thereof to have a first lien on the premises for the amount of payments made pursuant to the terms of the guaranty, but subject to a $2,000 homestead in said property belonging to the defendants Clarke. The priority of the liens claimed by the other defendants are determined, and the decree of foreclosure was entered as above indicated. Myrta E. Clarke appeals. Receiver Kelley now appears here as a cross-appellant.

As an appeal in equity the case here is for trial *de novo.* Preliminary to the consideration of the questions before us, and as a background in connection with the disputed questions of fact and law to be hereafter considered, it may be said in passing: That the record in this case discloses that this litigation finds its source in the Corn Exchange National Bank of Omaha, Nebraska; that during its active career this institution was popularly known as a "cattle bank," which signifies that it was largely devoted to financing western cattlemen; that Henry S. Clarke, Jr., entered its service as one of the managing officers in the spring of 1912, and previous to this time this institution had never declared a dividend upon its stock; that at the time Clarke entered its service he was part owner of, and exercised practical control of, six state and national banks situated in the "cattle country" in western Nebras-

ka and Wyoming, known as the "Clarke banks." These banks were also largely interested in financing the cattle industry.

It was largely because of these connections that Clarke's services were secured by the Omaha institution. After Clarke became connected with the Corn Exchange National Bank the Clarke banks, it appears, were operated as "feeders" for that institution. The new relation proved lucrative to both. In addition to this line of banks, other like connections were made with similar institutions. Under the new system the deposits of the Omaha institution were increased; it commenced the payment of dividends which, as time passed, were substantially increased and for many years its earnings aggregated in the neighborhood of 20 per cent. per annum. This business involved carrying and handling large lines of paper from the western banks, for under the new policy the Omaha institution secured the patronage of many other financial institutions in addition to the Clarke banks.

The method of transacting this business was peculiar to the industry in some respects. It would seem that the cattle industry, as then carried on, required financial accommodation in excess of those possible to furnish by the Clarke banks and other western institutions under the limitations imposed by the banking laws. As a result of the situation the evidences of indebtedness were taken by these western banks in two forms: One, in an ordinary note payable to the order of the bank's corporate name and which, when received by the Omaha institution, necessarily bore the corporate indorsement as such; the other was taken payable to the individual names of the officers of such feeder institution, and when turned over to the central institution at Omaha bore the individual indorsement of the payee named therein. It appears, however, that all of this paper properly represented the business of the "feeder banks." The latter received the proceeds derived from the paper thus discounted and sold, and reaped the profits thereby. The transaction in the second

form was, in truth, a loan of individual credit by the bank officer in his individual capacity to the corporate institution that such person represented in the transaction. Likewise, as the corporate bank had received the proceeds and reaped the profits it was under moral obligation to pay, in the event such indorsee was called upon to fulfil the terms of his contract. It is quite plain that this obligation of the bank involved to pay would not be subject to question so long as the bank itself was a solvent institution, and the officer who had loaned his credit in the form of an individual indorsement was one of the controlling powers in the institution involved.

There is no question raised as to the fact that the records of the Corn Exchange National Bank were accurate, properly kept, and reflect a true situation of its affairs.

The course of business hereinbefore outlined had existed for years. During this time the plaintiff herein and his associates represented by him, as trustee, were directors of this institution. The record in evidence discloses their express approval of the several notes thus received by the Corn Exchange National Bank.

The business grew to such volume that in September, 1924, the Corn Exchange National Bank had in its note case approximately one million dollars in notes which originated in the territory of the Clarke banks, and which were, by the Corn Exchange National Bank, received from them in the course of business above outlined.

In the fall of 1924 the results of the continued deflation in the cattle industry, commencing in 1920, culminating in the failure of a large number of banks in Nebraska and Wyoming and elsewhere, were such as to cause serious concern to the managing officers of the Corn Exchange National Bank. The reduction of live stock prices had rendered debtors, theretofore unquestioned, insolvent, caused the solvency of others to be a matter of doubt, and created a condition whereby many obligations, whose makers were actually solvent, were temporarily uncollectable. The best judgment of those interested was that an

extended period of time was required in order that such assets might be collected. In view of the relation that existed between the Clarke banks and the Corn Exchange National Bank, it was almost vital to the latter that the former be maintained as going, solvent, institutions.

A careful survey of the conditions of the loans of the Clarke banks was made, at the conclusion of which it was determined that the creation of a revolving fund of $300,000 for use during a period of not less than three years, to be used in the removing and handling of questioned assets in the latter institutions, would enable this string of banks to successfully weather the crisis.

There appears to be a conflict in the evidence as to whether it was intended that this fund, when raised, should be used for the direct relief of the Corn Exchange National Bank or not. But in view of the course of business whereby the million dollars in notes, then in its note case, would have to be cared for by those from whom it received them, it makes but little difference whether the Corn Exchange National Bank was to be a direct beneficiary or not. Had the fund been administered even in accord with the claims of the trustee herein, it would have resulted in manifest benefits to the stockholders of the Corn Exchange National Bank.

At all events, and as a result of a number of conferences at different places, and in the presence of different parties, an agreement was finally made between Henry S. Clarke, Jr., his wife and others, pursuant to which Gottlieb Storz and those associated with him executed a written guaranty to the Continental & Commercial National Bank of Chicago in the sum of $300,000, and the latter institution thereupon loaned to one Eaton, upon promissory notes indorsed by Clarke with recourse and executed by Eaton, and who was officiating as trustee of the fund as a first installment, the sum of $100,000. The agreement which was made preliminary to the execution of the written guaranty it appears was part in writing and in part oral. Excluding the evidence in the record which was ad-

mitted as not binding on Mrs. Clarke, it fairly appears that, during the negotiations which resulted in the execution of the guaranty, Mrs. Clarke was informed that if she would execute a deed or mortgage on her home which she was then occupying as such, and of which she was the owner in fee by virtue of an unrecorded deed to Gottlieb Storz, the latter and those associated with him would guarantee, and by this means secure, a loan of $300,000 to be used as a revolving fund for the maximum period of three years for the purpose of removing from the assets of the Clarke banks questioned assets, and handling the same to the best advantage.

On the faith of this representation and upon the faith of the oral agreement made in her presence to that effect, at her home in September, 1924, Myrta E. Clarke signed her name, in the presence of her husband only, to a Huffman General Supply House, form No. 100, warranty deed. At the time she affixed her signature to this paper, it was naught but a form; none of the blanks had been filled out, nor any of them ever filled out in her presence or pursuant to her written authority. She never appeared before any notary public and acknowledged the execution of this paper as an instrument or a deed. Subsequently her husband proceeded to the offices of the Corn Exchange National Bank some distance from the home. There, in the absence of his wife, and without her presence at any time before the notary, and without any actual acknowledgment by her to the completed instrument, and without any written authority whatever from her, he filled out a portion of the blanks and signed the same. Then, stepping into a cage occupied by the assistant cashier of the institution, who was also a notary, the latter at his sole request then filled out the certificate of acknowledgment, reciting falsely therein that "Henry S. Clarke, Jr., and Myrta E. Clarke, husband and wife, came before" him and acknowledged the same to be their voluntary act and deed. As to Mrs. Clarke this certificate is false in every respect. The property affected by its terms was admittedly a homestead.

"The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife." Section 2819, Comp. St. 1922.

It is thought sections 2451, 2550, Comp. St. 1922, are also applicable to the situation presented.

The only conclusion possible, in view of the undisputed facts and the terms of our statutes, is that the instrument before us is void as to the homestead. This conclusion is supported by many well-considered cases in this jurisdiction. *Anderson v. Cusack,* 115 Neb. 643; *Wilson v. Wilson,* 83 Neb. 562; *Lichty v. Beale,* 75 Neb. 770; *Meek v. Lange,* 65 Neb. 783; *Anderson v. Schertz,* 94 Neb. 390.

But it is insisted that the present case is one involving the doctrine of estoppel; that Mrs. Clarke is estopped by her act of signing a blank page, in view of the fact that it permitted completing, over her signature, what purported to be a valid instrument binding upon her.

It is not to be forgotten, however, that the facts in this record in no manner sustain the conclusion that Mrs. Clarke was guilty of fraud in the present transaction. The legal principle that fraud is never to be presumed, but must be clearly proved to entitle a party to relief on that ground, is so well established and so fundamental as to require the citation of no authorities to support it. Then, too, it must be conceded that it affirmatively appears that, at most, Mrs. Clarke's dereliction may be summed up as "culpable negligence" in entrusting to her husband a blank with her name affixed thereto. But even if this be true, it does not follow that, as the sole or proximate result of the culpable negligence in question, Storz and his associates were deceived, and therefore the basis of the doctrine of estoppel, as applied in the ordinary case, might be established. Had this deed in question been fully completed in its execution and all of its details so that when tendered to Storz it appeared a completed instrument, and that he relied upon it as such, the conclusion might be otherwise. However, when this instrument, on a blank sup-

plied for use to the trade as a general warranty deed, came into his hands as an instrument intended to accord security only, and not only lacking "grantee," but without "consideration," then a blank (Comp. St. 1922, secs. 5662, 5663) with description incomplete, with no terms of defeasance, or terms identifying and limiting the liability to be secured thereby, appearing therein, with actual knowledge on his part that the subject-matter was a homestead, with the only authority for its completion a letter signed, purporting to be signed, and authorized by the husband only, it would seem that the basis for the contention that estoppel is applicable in the case in behalf of plaintiff wholly disappears. It is thought that the very appearance presented by the deed itself at that time fully disclosed to him that Mrs. Clarke had been indeed guilty of "culpable negligence in connection therewith," hence he could not be misled thereby. At all events, he never relied upon a completed instrument delivered by the Clarkes, but his reliance, under the facts in the case, must be deemed to have been based upon the authority conferred upon him to complete the instrument thus placed in his possession. This necessitated the exercise of the powers of agency. The subject-matter of the transaction was one in which Storz had an individual interest. He knew the parties and the peculiar nature of the subject of the transaction, a homestead, and that in the completion of the instrument he was necessarily acting for both parties interested therein. He thus occupied, of necessity, with reference to Mrs. Clarke, the position of an agent dealing with his principal with reference to matters in which his individual interest conflicted with that of his principal. The knowledge of this fact is imputable to his associates for whom he subsequently became trustee. They, with him, were the joint beneficiaries of his act. The situation revealed in the record, at least, imposed upon Storz the duty of absolute good faith, and to conform strictly to the limitations imposed by his actual authority. *Drury v. Foster*, 2 Wall. (U. S.) 24.

"An assumption of authority to act as agent for another of itself challenges inquiry. Like a railroad crossing, it should be in itself a sign of danger and suggest the duty to 'stop, look and listen.' It is therefore declared to be a fundamental rule, never to be lost sight of and not easily to be overestimated, that persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound at their peril, if they would hold the principal, to ascertain not only the fact of the agency but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it." 1 Mechem, Agency (2d ed.) 527, sec. 743.

Has the plaintiff established that the nature and extent of authority he received as to Mrs. Clarke justified the filling up of the blanks in the printed form at the time and in the manner it was done? At that moment, through no fault of Mrs. Clarke, the guaranty itself, to secure the $300,000 revolving fund, had been prematurely terminated by the voluntary acts of certain guarantors, and at that time the plan of aiding the Clarke banks wholly abandoned.

Thus, the consideration which, in fact, constituted the condition upon which Mrs. Clarke had orally agreed to secure by use of her home the guarantors against loss because of having executed the guaranty necessary to secure the $300,000 fund for the period of three years had wholly failed. Through this premature termination of this guaranty, and the premature abandonment of the plan of aiding the Clarke banks, all possibility of substantial value accruing therefrom to the Clarkes had utterly vanished. In short, the guarantors had not kept faith and had not complied with the promise to the surety.

True, certain of the guarantors in their evidence deny that the 3-year period formed any part of their prior agreement as the matter was discussed with and by them. But Mr. Gordon, who was a director of the Corn Exchange National Bank and one of the guarantors, testifies that the agreement among the six guarantors, indeed made

prior to the signing of the deed in blank by Mrs. Clarke, and indeed prior to the written guaranty to the Chicago bank, was that their engagement involved a maximum of three years' time, and a maximum amount of $300,000, and that there was no time fixed that the guaranty should run or be kept good except as to the maximum of three years.

Nothing had been done toward completing the instrument now sued on by or in behalf of Storz until after all of the events just referred to had transpired. A demand or request was then made upon Henry S. Clarke, Jr., and upon the attorney of Myrta E. Clarke to complete this instrument. This demand was met with refusal on the part of both. After this refusal thus made, under Storz' direction the instrument in suit is further partly completed and based on this incomplete instrument upon which Storz as trustee, is now maintaining the present action for the benefit of all the signers of the guaranty to the Chicago bank including Gordon. This action is admittedly in the form permitted by statute. It is, in effect, an attempted enforcement of an alleged obligation in favor of the six guarantors as joint promisees.

In view of the form of the action brought and the substantial nature of the obligations sought to be enforced, it would seem that it must be considered as an action brought in favor of the guarantors jointly.

It would seem, therefore, that the knowledge of the original contract and of the situation possessed by any one of the joint obligees or promisees is imputable to all. 22 C. J. 351, sec. 404; *Baker v. Union Stock Yards Nat. Bank,* 63 Neb. 801; *Stephenson v. Perry,* 112 Neb. 294; *Southern Life Ins. Co. v. Wilkinson,* 53 Ga. 535; *Parker v. State,* 8 Blackf. (Ind.) 321; *Shirk v. Brookfield,* 79 N. Y. Supp. 225.

In view of the total absence of the element of fraud, so far as related to Mrs. Clarke, the entire lack of actual authority to complete the deed when it was actually done by Storz, as trustee, and in view of the notice which the

surrounding circumstances, as well as the relation of the parties, imputed to Storz, as trustee, we feel there is no basis for the estoppel claimed.

It follows, therefore, that, so far as homestead rights and interest are vested in her as the wife of Henry S. Clarke, Jr., the same are wholly unaffected by the instrument in suit. *Betts v. Sims*, 25 Neb. 166; *Whitlock v. Gosson*, 35 Neb. 829; *Davis v. Thomas*, 66 Neb. 26; *Anderson v. Cusack*, 115 Neb. 643.

We have carefully considered the authorities cited in the able brief on behalf of the appellee, but in view of the facts disclosed in the present record we do not find them in point. Among others, *Pitman v. Mann*, 71 Neb. 257, is cited, but the opinion in this case contains language which, of itself, excludes the application of the doctrine announced in this case to the case at hand. In that opinion Ames, C., says in part: "The statute avoiding a conveyance or incumbrance of the homestead of a married person, without the signature of both husband and wife, was enacted with the evident purpose of protecting both of the parties to the marriage, and those persons composing their families and dependent upon them. During the lifetime of any of such persons it may be that a husband or wife, who alone has executed such an instrument, may successfully defend against it without the concurrence of his or her consort or the dependents of either; and it may even be that such a defense would be entertained if made by a sole survivor of the family, who had executed the instrument without fraud or concealment with respect to the homestead character of the lands, but neither of these questions is involved in this inquiry, or intended to be decided."

It follows then that, as applied to the statutory homestead, the instrument in suit is void.

At the time this instrument was delivered, however, it appears that the record title to the premises described therein was in the name of Henry S. Clarke, Jr. True, Myrta E. Clarke was, by virtue of an unrecorded deed,

the true owner thereof. The plaintiff and those represented by him, however, dealt with the situation in good faith relying on the record title and in ignorance of the unrecorded deed. Under these circumstances the fact that Myrta E. Clarke was, together with her husband, in joint occupancy of the premises as a family home did not impart notice to Mr. Storz and his associates of the fact that she claimed any title to the property or any right therein other than right of homestead, or such rights as would vest in her by virtue of her husband's ownership. *Kirby v. Tallmadge*, 160 U. S. 379; *Townsend v. Little*, 109 U. S. 504; *Thomas v. Kennedy*, 24 Ia. 397; *Rendleman v. Rendleman*, 118 Ill. 257; *Garbutt & Donovan v. Mayo*, 128 Ga. 269; *Rankin v. Coar*, 46 N. J. Eq., 566; *Atwood v. Bearss*, 47 Mich. 72; 5 Thompson, Real Property, 334, sec. 4249.

In its decree the district court determined that the instrument in suit was binding upon Henry S. Clarke, Jr., and he, not having appealed, is concluded by that determination. Mrs. Clarke in her appeal presents solely the question of homestead rights, and we will now address ourselves to the limits and extent of the homestead as determined and defined by our statutes.

This court is committed to the doctrine that, as between the mortgagor and mortgagee, the homestead means something more than, and different from, the $2,000 exemption which the statute allows the homestead claimant as against the claims of creditors. It means the actual home of the family including the lands and buildings constituting the same, and the possession and ownership of all of which may be successfully defended by either husband or wife during the marriage state against independent acts of either, and against joint acts of either or both. *Anderson v. Cusack*, 115 Neb. 643; *Anderson v. Schertz*, 94 Neb. 390; *Davis v. Merson*, 103 Neb. 397; *Meisner v. Hill*, 92 Neb. 435.

While it may be said that *Meisner v. Hill, supra,* left the extent of the homestead as between others than credi-

tors and debtors a matter of doubt, yet the invariable course of decisions of this tribunal since *Meisner v. Hill, supra,* was announced has been to limit the physical extent of the homestead as between others than judgment creditors and debtors to a "quantity of land not exceeding 160 acres * * * not included in any incorporated town, city or village, or, * * * a quantity of * * * land, not exceeding in amount two lots, being within an incorporated town, city or village." This, as a fact, is accorded express recognition in *Campbell v. Gallentine,* 115 Neb. 789.

In the present case the premises are made up of lots 13, 14, 15 and 16, including a vacated alley adjacent to and between lot 13 and the other lots mentioned. Upon vacation the land comprised in the vacated alley accreted in equal portions to the adjacent lots. The dwelling house is situated on lots 14 and 15. The barn and garage in connection therewith are situated on parts of lots 13 and 16.

The application of the principles hereinbefore announced to the situation results in a finding that lots 14 and 15, and the south half of the vacated alley adjacent thereto, constitute the statutory homestead of the Clarkes. As to these premises last described the instrument in writing, which forms the basis of plaintiff's petition, is absolutely void, and Mrs. Clarke is entitled to a decree quieting the title of lots 14 and 15 and part of alley pertaining thereto against the same.

On the other hand, the remainder of the tract, viz., lots 13 and 16 and part of the vacated alley forming no part of the statutory homestead are subject to the decree entered in the district court for Douglas county, Nebraska, with the priorities as therein determined, but without deduction as to homestead rights of the Clarkes, and, that as against all judgment creditors in suit the rights of the Clarkes in said homestead are limited to the sum of $2,000.

The judgment of the district court is therefore reversed

and the cause remanded, with directions to enter a decree in accordance with this opinion.

REVERSED.