EDITH BACON, APPELLEE, v. WESTERN SECURITIES COMPANY ET AL., APPELLANTS.

FILED JANUARY 19, 1934. No. 28699.

Glenn N. Venrick and Clarence T. Spier, for appellants.

De Lamatre & De Lamatre, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

PAINE, J.

This was an action in equity, brought by a widow to quiet title against certain mortgages outstanding against her homestead, a residence property in Omaha. The court granted the relief prayed for by the plaintiff.

The petition, filed September 2, 1931, alleges in substance that the plaintiff, Edith Bacon, was the owner in fee simple of a certain residence lot in the city of Omaha, and had occupied the same continuously since she received title to it upon November 13, 1916. She further set out that there was on record in Douglas county against this property a series of nine mortgages, to wit: (1) Mortgage dated April 9, 1925, for $2,250, to the Conservative Savings & Loan Association; (2) a mortgage dated November 12, 1925, for $3,000, to the above mortgagee; (3) a mortgage dated January 3, 1928, for $800, to the Omaha Safe Deposit Company; (4) a mortgage dated March 18, 1926, for $4,500, to the Conservative Savings & Loan Association; (5) a mortgage dated September 12, 1928, in the sum of $4,700, to the Western Securities Company; (6) a mortgage dated September 13, 1928, for $638.40, to the Omaha Safe Deposit Company; (7) a mortgage dated October 1, 1930, for $3,800, to the Western Securities Company, duly assigned to the Penn Mutual Life Insurance Company; (8) a mortgage dated October 1, 1930, for $990, to the Western Securities Company; (9) a mortgage dated October 1, 1930, in the sum of $313.32, to the Omaha Safe Deposit Company.

The plaintiff testified that she did not sign, execute, or acknowledge any of the aforesaid nine mortgages, or the notes secured thereby. The evidence discloses that these nine mortgages were forged instruments, to each of which her husband signed his name and forged her name without her knowledge. They were husband and wife from December 1, 1916, until the death of the husband,

John P. Bacon, on June 10, 1931. It was decided by the trial court that the last three mortgages above set out should be canceled and surrendered and the title of the property quieted as against them, and the notes also be surrendered.

The evidence discloses further that the first group of this series of nine mortgages was paid off and discharged of record through the funds secured from the later mortgages.

Upon January 28, 1929, a foreclosure action was brought to foreclose mortgage No. 6, and summons was left at the residence for the husband and wife, which action was dismissed without prejudice upon October 24, 1930.

Upon November 6, 1929, a foreclosure action was also commenced upon mortgage No. 5, and service of summons was had upon the husband and wife on that day by leaving the same at their usual place of residence, and after the decree was entered on January 31, 1930, Cecil F. Shopen filed a request for stay for Edith and John P. Bacon on February 7, 1930, and, while pending stay, these two decrees of foreclosure were satisfied on October 18, 1930, by funds secured by Mr. Bacon from mortgages Nos. 7, 8, and 9. The evidence further discloses that the Western Securities Company mailed a registered letter to the plaintiff, notifying her they would bring foreclosure action on mortgage No. 5, and that she received this letter and signed the registry receipt for it upon October 24, 1929, and that the action was instituted thereon upon November 6, 1929. She claims to have left for McCook, Nebraska, immediately after signing the registry receipt, and remained there for five weeks, and that she never read the letter, and was not in Omaha at the time the summons was left at the home.

Her evidence that her signature was forged was supported by that of John H. Bexten and Oscar H. Holquist, two men who pass on disputed signatures in the First National Bank of Omaha. No handwriting experts were called by the defendants.

Cecil F. Shopen, an attorney-at-law, testified that he was not employed by plaintiff to represent her in the foreclosure suit, and had no transactions with her in reference thereto, but was employed by her husband.

Section 40-104, Comp. St. 1929, provides: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife." Nebraska cases are so numerous in support of this law, and the holdings have been so uniform, that one need but cite a few of the many cases. *McCreery v. Schaffer*, 26 Neb. 173; *Storz v. Clarke*, 117 Neb. 488; *Wilson v. Wilson*, 83 Neb. 562; *France v. Bell*, 52 Neb. 57; *Thompson v. Foken*, 81 Neb. 261. Our court, in addition to this uniform holding in regard to deeds and mortgages, has also held that an executory contract for the sale of the homestead, which the wife does not sign, is likewise invalid. *Meek v. Lange*, 65 Neb. 783; *Lichty v. Beale*, 75 Neb. 770; *Davis v. Merson*, 103 Neb. 397.

In the case at bar, the evidence was convincing that the signatures of both husband and wife to each of the mortgages were made by the same person, and that that person was the deceased husband.

The defendants insist that the plaintiff was guilty of want of ordinary diligence in taking no steps to ascertain the condition of the outstanding liens against her land after receiving their registered letter, and that, if she had promptly made complaint, the mortgages 7, 8, and 9, canceled by the decree of the trial court, would never have been executed; and it is argued that, as her husband did not die until June 10, 1931, if she had made complaint, innocent mortgagees would not be now called upon to suffer, and that she is now estopped from denying the validity of these mortgages.

If plaintiff had been guilty of active fraud, she might be estopped from asking that the mortgages be canceled, but mere passive failure to act, without any fraud on her

part, cannot preclude her from claiming the protection of the homestead law of our state. *Giles v. Miller,* 36 Neb. 346; *France v. Bell,* 52 Neb. 57; *Storz v. Clarke,* 117 Neb. 488; *Interstate Savings & Loan Ass'n v. Strine,* 58 Neb. 133; 13 R. C. L. 662, sec. 119.

■ Ordinarily it is true, as contended for by the defendants, that the certificate of a notary public, in regular form, is, in the absence of fraud, conclusive in favor of those who in good faith rely upon it. Evidence, which is merely in contradiction of the facts certified, will not be received. *Phillips v. Bishop,* 35 Neb. 487. But, in the case at bar, fraud is proved, and it is disclosed that the husband of plaintiff usually took the mortgage to the notary with both signatures affixed, and usually the accommodating notary affixed his seal. In one case a notary testified that plaintiff's acknowledgment was taken over the telephone, but the records of the telephone company show that the telephone was disconnected at that time. In one case the notary testifies that a lady accompanied Mr. Bacon, but would not swear it was the plaintiff. Other notaries testify to telephone acknowledgments of some woman called to a telephone by Mr. Bacon. One notary is very positive that he knew plaintiff's voice, and recognized it over the telephone on two occasions; but the evidence is clear that, during the period of time covered by these two days, the plaintiff was visiting in McCook, Nebraska. There is no evidence of any notary that is clear and convincing that the plaintiff ever executed or acknowledged any of these instruments.

There is a maxim, *Causa proxima, non remota, spectatur,* indicating that it is the proximate, and not the remote, cause that governs. In the case of some of these mortgages, the proximate cause of their loss was their own acknowledgment of it by their own notary, and when they come into a court of equity they plead for affirmative relief, and then this maxim governs, as they were negligent so far as the notary they selected was concerned. Had they carefully examined these signatures and seen

that they were written by the same person, they would not have taken the mortgages nor advanced their money.

The decrees of foreclosure which defendants want enforced are founded upon a forged signature, which makes a void mortgage.

Two exhaustive articles by Dean Foster upon the Nebraska homestead law may be found in volume 3, Nebraska Law Bulletin. He tells us that the three text-books on homesteads are Smyth, Thompson, and Waples, the last written in 1893, and since that publication no text-writer has entered into this field, where the authorities are disagreed upon nearly every phase of the subject. Really nothing is settled except that homestead laws are to be construed liberally to carry out the intention of the legislature.

A liberal construction of the laws relating to the points discussed, and many others set out in the briefs, discloses no just ground for reversing the finding of the lower court, and the judgment is therefore

AFFIRMED.