MARGARET EVANS, APPELLEE, v. FIRST NATIONAL BANK OF FAIRBURY, APPELLANT.

295 N. W. 381

FILED DECEMBER 10, 1940.   No. 30884.

*Hartigan & Skultety,* for appellant.

*Perry, Van Pelt & Marti* and *Arthur E. Perry, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and JOHNSEN, JJ.

PAINE, J.

Plaintiff brings an action for damages against a bank and its president for having sold her a mortgage by false and fraudulent representations. The jury returned a verdict in favor of the plaintiff and against the bank for $2,041.11. Motion for new trial being overruled, the bank appealed. Case dismissed as to defendant Bonham.

Plaintiff in her amended petition charges that the First National Bank of Fairbury and the Fairbury Savings Bank had identical places of business, and that the Savings Bank was controlled, dominated and managed by the First National Bank, and Luther Bonham was president of both banks; that on December 29, 1929, the defendants, acting through said Savings Bank, and as owners thereof, sold her a note for $1,500, executed by Lee J. Cramb, guardian of George H. Cramb, an insane person, which note was represented to be secured by a first lien on the northeast quarter of section 22, township 2, range 1, in Jefferson county, Nebraska, and it was further represented by president Bonham, and those acting under and for him and the bank, that said note was a safe and sound investment, and

could be resold at any time for its full face value, together with accrued interest thereon, and that it would be impossible for the plaintiff to place her funds in a better investment; that she believed these statements and representations to be true; that she relied upon and acted thereon, and purchased said note and paid the full sum of $1,500 therefor solely in reliance upon the representations of the defendants.

Plaintiff further alleges that said $1,500 note was not secured by a first mortgage on said land, in that said land was the homestead of George H. Cramb and Elizabeth T. Cramb, his wife, and the wife did not sign, execute, or acknowledge said mortgage; that defendants, as part of said scheme to defraud, paid or caused to be paid the first seven coupons attached to said note, thereby concealing defects therein, and plaintiff did not at any time see said note, or know the form or contents thereof, or how the same was executed or indorsed.

Plaintiff further alleges that said note was not secured in any way; that it was not a good, safe investment, and that by reason thereof the plaintiff has been damaged in the sum of $1,500 and interest. Attached to the amended petition as exhibit A is a copy of said mortgage, showing the same to have been executed only by Lee J. Cramb as guardian of George H. Cramb, an insane or incompetent person, the mortgagee being the Fairbury Savings Bank.

The defendant Luther Bonham in his answer admits that he was president of the Fairbury Savings Bank, which bank owned two notes, one for $1,500 and one for $3,500, which notes were secured by a first mortgage on the land heretofore described, executed by Lee J. Cramb as guardian of George H. Cramb, an incompetent person.

Defendant Bonham further alleges that on December 29, 1929, the Fairbury Savings Bank sold the $1,500 note to the plaintiff, and the $3,500 note to Henrietta Hoopes and S. M. Bailey, trustees of the estate of Norman Cherry, and that said notes when transferred were indorsed without recourse upon the Fairbury Savings Bank; that previous to

September 1, 1929, George H. Cramb became of unsound mind, and his son, Lee J. Cramb, was duly appointed his guardian; that it was impossible to renew the $10,000 mortgage then outstanding upon certain lands belonging to George H. Cramb without leave of the district court for Jefferson county, and that regular proceedings were conducted and leave granted to the guardian by the court to mortgage all of George H. Cramb's property; that pursuant to the court order $5,000 was loaned upon one quarter of land and $5,000 was loaned upon another quarter of land in Jefferson county; that the Fairbury Savings Bank and its officers acted in good faith, and relied upon the order of the district court, and upon the advice of its legal counsel; that Elizabeth T. Cramb, the wife of George H. Cramb, participated in all of the negotiations leading up to the making of said loan. Defendant Bonham denies that he participated in the actual making of the loan, or the sale and transfer of the note and mortgage to the plaintiff, and that he made no representations in regard to the same.

The First National Bank of Fairbury files its separate answer; admits that it is a banking corporation, and that Luther Bonham is its president, and denies all other allegations in the petition, and for further answer admits that on or about December 24, 1929, the First National Bank of Fairbury purchased the assets of the Fairbury Savings Bank, and assumed certain liabilities of said savings bank, and attaches to its answer exhibit A, which is a copy of the agreement made and entered into between the Fairbury Savings Bank and the First National Bank, executed for each party by Luther Bonham, president of each bank, one of the provisions being that the First National Bank took over and assumed liabilities and obligations of the Fairbury Savings Bank at the close of business on December 23, 1929.

The plaintiff for reply denies each and every allegation in the answers of defendants not admitted; admits that there was indorsed, without plaintiff's knowledge or consent, the words "without recourse," but plaintiff, being unfamiliar with business transactions, did not examine said note, or

know of said indorsement, and charges that said pretended indorsement was vitiated by reason of the fraud set out in her petition, by which the defendants are estopped from claiming that the indorsement "without recourse" is a defense to this action.

The defendant First National Bank assigns 13 errors for the reversal of the judgment in this case. Many of these assignments of error set out rulings of the court in excluding several exhibits filed in the action in the district court for Jefferson county leading up to the issuance of the license to the guardian of George H. Cramb to mortgage the incompetent's real estate, also excluding exhibits filed in the foreclosure proceedings, and withdrawing from the jury an inventory of the estate of George H. Cramb, deceased, signed by Elizabeth T. Cramb as executrix, in which inventory she sets out the land in the case at bar, and describes it as being subject to the mortgage herein. We do not find prejudicial error in any of these rulings.

It is charged that the court erred in giving instruction No. 1, in that it does not fairly and truly state the issues set up in the pleadings, and is an effort to emasculate the issues. This court has disapproved of the former practice of copying the entire pleadings into the instructions. *First Nat. Bank v. Davis,* 123 Neb. 304, 242 N. W. 655. Nor should the court insert in the instructions allegations of the pleadings which found no support in the evidence. *Hutchinson v. Western Bridge & Construction Co.,* 97 Neb. 439, 150 N. W. 193. It is, however, proper for the trial court to present to the jury a simple and concise summary of the pleadings. *Merritt v. Ash Grove Lime & Portland Cement Co.,* 136 Neb. 52, 285 N. W. 97. This first instruction, of nearly two pages, in the case at bar, appears to the court to fairly reflect in brief summary the proved allegations of the several pleadings, which covered some 13 pages in length, and in no way did this instruction No. 1 emasculate the issues in the case.

Another error assigned is in the court giving instruction No. 2, which reads as follows:

"You are instructed that from the evidence the Court finds and instructs you that as a matter of law the mortgage instrument involved in this case, being plaintiff's exhibit 5, is not now and never was a valid lien on the real estate described in it, never was enforceable as a lien against said real estate and at no time since its execution constituted any security for the payment of the debt evidenced by the promissory note, plaintiff's exhibit 4.

"You are therefore instructed that in your deliberations you should disregard plaintiff's exhibits 7, 8 (also identified as plaintiff's exhibit 14), 10, 11, 12, 13, 15, 17, 18, 19 (also identified as defendants' exhibit R), defendants' exhibits F, G, H, I, K, L, M, N, O, P, Q, all testimony in regard thereto and all testimony in regard to other proceedings in this court or in the county court of this county in the matter of the George H. Cramb estate."

The defendant in his brief reviews all of the facts relating to the appointment of Lee J. Cramb as guardian for his father, George H. Cramb, incompetent, and all of the proceedings in the district court leading up to the order authorizing and directing the guardian to mortgage both pieces of real estate, and setting out the statute of Nebraska, section 30-1201, Comp. St. 1929, granting authority to the district judge to authorize a guardian to mortgage real estate, to redeem existing mortgages, and discusses many cases in which the constitutionality of this statute has been approved by this court. The argument of defendant is very interesting, and is well supported by abundant authorities, but does not appear to the court to cover the real question at issue. Section 40-104, Comp. St. 1929, provides definitely: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife."

There is no question in the case at bar but that the property was the homestead of the incompetent and his wife. She was not a party to the mortgage. All of the proceedings were taken which authorized the guardian to mortgage

the interest of the incompetent in the homestead, yet the mortgage on its very face shows that in no way was the wife of the incompetent considered in executing this instrument, for the first paragraph of the mortgage reads as follows: "This indenture, made this 25th day of October, 1929, between Lee J. Cramb, Guardian of the Estate of George H. Cramb, an insane or incompetent person, of the County of Jefferson and State of Nebraska, party of the first part and the Fairbury Savings Bank, of Fairbury, Nebraska, party of the second part:"

Many decisions of this court hold that under the homestead law of 1879 a mortgage on the homestead of a married person to be valid must be executed and acknowledged by both husband and wife. This is true even though it may deprive creditors of certain rights and work a hardship in some cases. *Aultman & Taylor Co. v. Jenkins,* 19 Neb. 209, 27 N. W. 117; *Phillips v. Bishop,* 31 Neb. 853, 48 N. W. 1106; *Whitlock v. Gosson,* 35 Neb. 829, 53 N. W. 980; *Meisner v. Hill,* 92 Neb. 435, 138 N. W. 583; *Anderson v. Schertz,* 94 Neb. 390, 143 N. W. 238; *Davis v. Merson,* 103 Neb. 397, 172 N. W. 50; *Bacon v. Western Securities Co.,* 125 Neb. 812, 252 N. W. 317.

It is the contention of the attorney for the bank that this mortgage upon the homestead, in which the wife's name did not appear, is not an absolutely void mortgage, but that it is good, save and except as to the homestead right of $2,000 in this land; but in *Storz v. Clarke,* 117 Neb. 488, 221 N. W. 101, Judge Eberly said: "The statutory homestead, as between mortgagors and mortgagee of a real estate mortgage invalid as to homestead interests of the mortgagors included therein, is unlimited as to value and is properly described as a 'quantity of land not exceeding 160 acres, not included in any incorporated town, city or village, or a quantity of land, not exceeding in amount two lots, being within an incorporated town, city or village,'" which seems to dispose of the contention of the bank.

We therefore hold that the instructions of the trial court

were correct, under the law of Nebraska, in stating to the jury that the mortgage is not now, and never was, a valid lien on the real estate, that it never was enforceable against the real estate, and that at no time did the mortgage executed alone by the guardian for the insane husband constitute any security for the payment of the mortgage sold in this case, and that at no time did it constitute any security for the payment of the debt.

There is no question but that the attorney secured from the district court a proper order to mortgage the interest of the insane husband, but nothing in that decree could or did obviate the necessity for the wife executing both the note and the mortgage.

Now, to set out the contentions of the plaintiff, she testified that she was 73 years of age, and had known Luther Bonham for 25 years, as her husband had been cashier of the bank under Mr. Bonham for over 20 years, and until the time of her husband's death. The plaintiff testified she always went to Mr. Bonham about any of her business transactions, and considered him one of her best friends; that he knew of her property holdings, and she had asked him to let out her money on a farm mortgage when something good came up. The bank telephoned her to come down, and an employee assured her this was a very good mortgage. The plaintiff then went directly to president Bonham's private office, and he assured her it was a splendid deal and a good loan on one of the most valuable pieces of property in the county, and as good as gold. This was before plaintiff bought the note and mortgage.

On behalf of the defendant bank, Luther Bonham testified positively that he had nothing whatever to do with the sale of the note and mortgage to the plaintiff, and that he was in Minnesota on the day she bought this loan. On cross-examination, he said she had talked with him many times about it after the note was in default, and he had told her that in his opinion the note could be collected. He testified that the effective date of the sale of the assets of the Fairbury Savings Bank to the defendant bank was Oc-

tober 1, 1929, but that the Savings Bank was never actually merged, but was separately liquidated, all as shown by exhibits which were signed by the Northwest Bancorporation, which about this time became interested in the affairs of the defendant bank.

In this connection, exhibit No. 3, offered by plaintiff, reads as follows:

"The Fairbury Savings Bank
Luther Bonham, President
S. M. Bailey, Vice-president
Henrietta Hoopes, Sec.-Treas.
Fairbury, Nebraska
Nov. 22, 1929.

Department of Trade & Commerce

Department of Trade & Commerce,    Bureau of Banking
Lincoln, Nebr.                          Nov 23 1929
                                    . Received

Gentlemen:—

Referring to your letter of recent date asking for a report on Bank Examiners recommendations, will state that this Bank has been sold to the Northwest Bancorporation and will in a few days merge with the First National Bank of this city.

Very truly yours,
H. Hoopes,
Sec.-Treas."

Several times it is argued that this note was assigned to the plaintiff "without recourse." See Comp. St. 1929, sec. 62-309. This indorsement ordinarily relieves indorser from certain liabilities in connection therewith. *Johnson v. First Trust Co.,* 125 Neb. 26, 248 N. W. 815. But, in the case at bar, the assigning of this note to the plaintiff "without recourse" was simply a form of the contract by which the savings bank limited its responsibility at the time of sale. "Such an indorsement indicates a purpose not to assume a liability on the paper or responsibility for its payment and is sufficient to transfer title, but, provided there is no fraud, concealment, or misrepresentation, it exempts the

transferor from all liability as indorser, except that he is still chargeable with implied warranties as a seller of the paper." 10 C. J. S. 701, sec. 214. See Brannan, Negotiable Instruments Law (6th ed.) 493, sec. 38.

Now, in the case at bar, when fraud and misrepresentation were set up and proved, the court then is justified in going behind the contract and instructing the jury generally, as the trial judge did in instruction No. 17, that if the jury find that the plaintiff was induced to purchase the note and mortgage by false representations, and find that such were made, then liability for such false representations cannot be avoided by the indorsement on said note of the words "without recourse," the court also stating the alternative proposition, and this instruction stated the law as this court has announced it in *Paul v. Cameron,* 127 Neb. 510, 256 N. W. 11: "In this state, in actions for false representations, proof of a scienter is not essential to recovery; and where a petition in this class of cases clearly and positively alleges that the representations relied on by plaintiff were false, while the further allegation in effect 'that the defendant knew it was false, or else made it without knowledge as a positive statement of known fact,' is in accord with good practice, it is not essential to recovery that either be incorporated in such pleading or covered in the instructions to the jury."

"When a note is indorsed without recourse, it does not relieve the indorser, if there was sufficient evidence of concealment, fraud, or misrepresentation to justify submission of the issue, and to sustain the verdict reached by the jury." *Farmers & Merchants Bank v. Wisdom,* 226 Ky. 179, 10 S. W. (2d) 846.

While other defenses are urged in this case, which appear to have little merit and cannot be discussed, we have reached the conclusion that the trial court was right in entering the judgment upon the verdict returned by the jury, and the same is hereby

AFFIRMED.

JOHNSEN, J., not participating.

The following opinion on motion for rehearing was filed March 12, 1941.

PAINE, J.

In this case, appellant filed a motion and brief for a rehearing, upon which oral argument was ordered, and in which the principle announced in *Pohlenz v. Panko,* 106 Neb. 156, 182 N. W. 972, was cited for the first time as controlling in the present litigation. It is held in that case that, where the district court grants a license to sell real estate constituting a homestead for the payment of debts, after the giving of notice to all interested parties, and from which order no appeal was taken, the order cannot be collaterally attacked by one who failed to assert his homestead interest before the issuance of the license. It will be observed in that case that the claimant of the homestead interest had his day in court and failed to assert his right. In the instant case, the proceeding to secure authority for the guardian to mortgage the real estate of the incompetent ward was commenced by the filing of the application. No notice was given or required under the statutes then existing. The hearing was *ex parte* in character. The widow, the owner of the homestead interest, was not made a party, and lost no rights by the proceeding. The authority granted to the guardian was that he might lawfully act for his ward to the extent which the court prescribed. The interests of all others remained as before. The case is clearly distinguishable, and can in no way change the result heretofore arrived at.

The motion for a rehearing is therefore overruled.